THE WHITEHALL TRANSPORTATION COMPANY, Respondent, *v.*
THE NEW JERSEY STEAMBOAT COMPANY, Appellant.

Non-compliance by a vessel with the provisions of the navigation laws in
regard to lights is negligence, which will defeat a recovery by its owners
for injuries to it resulting from a collision with another vessel, if the
absence of the proper lights in any way contribute to the injury.   But
where the evidence tends to show that the collision resulted solely from
other causes, the question of contributory negligence becomes one of
fact.

The value of the use of a vessel while undergoing repairs and interest
upon the cost of the repairs are proper items of damages in an action
for injuries to such vessel occasioned by defendant's negligence.

(Argued September 24, 1872 ; decided January term, 1873.)

APPEAL from a judgment of the General Term of the
Supreme Court in the third judicial district, affirming a
judgment in favor of plaintiff, entered upon the report of a
referee.

The action was brought to recover damages resulting from
the sinking of a canal boat belonging to plaintiff, ladened with
coal, in consequence of a collision with defendant's steamer
St. John, alleged to have been occasioned by the negligence
of those in charge of that steamer.

It appeared upon the trial that near midnight of the 28th
of June, 1866, the plaintiff's propeller Griswold was passing
up the Hudson river, having in tow four canal boats, abreast
of each other, about 250 feet from her stern   The defend-
ant's steamboat St. John was at the same time passing
down the river.   The tow attached to the Griswold was
discovered by the St. John's crew and wheelsman when
the St. John was about two miles distant from it, between
the Kinderhook lights, the upper one of which was then
situate on the east bank of the river, and the lower one
on its west bank, the channel of the river being about
seven hundred feet wide, and the ordinary course for steam-
boats between the two lights being straight.   The St. John,
about one-fourth of a mile above the lower light, came

down and was passing about one hundred feet west of the Griswold, in a direction that would have carried her west of the tows, when she sheered to the east and ran into the first boat of the four boats abreast, and sank her with her cargo. Just below the lower light the channel of the river, descending, bends to the west, and until the Griswold was passing this bend the St. John had not been discovered by the crew of the Griswold or of the tow. The regulations for the government of pilots made the signals, for passing steamers, one sound of the steam whistle to keep to the right and two sounds to keep to the left; these to be made first by the ascending steamer. If the dangers of the navigation, darkness of the night, narrowness of the channel or other cause, rendered it necessary for the descending boat to take the other side, she could do so by making the necessary signals, and the ascending steamer must govern herself accordingly, and each steamer was required to have side lights. The Griswold had none. When the Griswold was rounding the bend, just below the lower light, the two steamers being then from three-quarters of a mile to a mile apart, the Griswold gave to the St. John a signal of a single whistle, indicating her intention to pass the St. John to the right. This signal was heard by those in charge of the St. John, but was not answered by any signal from her, nor was any signal subsequently given by her; but, prior to this time, three signals of two whistles each had been given by the St. John to the Griswold, indicating the intention of the St. John to pass the tow to the left. These were given before the crew of the Griswold had discovered the St. John, and were not heard on board of the Griswold or her tow. It was flood tide, and therefore necessary that the Griswold should keep well toward the east bank of the channel, and the hausers taut in order to pull the tow to the east and prevent its going toward the west bank of the channel. After rounding the bend, she kept along the east bank of the channel, her tow following. As soon as possible after the St. John sheered east and pointed toward the tow, the starboard hauser connecting the Griswold with her tow

was cast off to sheer the tow away from the St. John and escape the threatened danger.

The referee found as a fact that there was no fault on the part of the Griswold or her tow contributing to the collision, but that the same was occasioned solely by carelessness in the management of the St. John. The boat thus sunk was raised, her cargo taken out, and the boat taken to Coxsackie and partially repaired, and from thence taken to Whitehall, where the necessary repairs were completed; her whole repairs, including the value of her use while undergoing the repairs, including the damages to her cargo, amounted to a sum somewhat exceeding $3,200, for which amount, with $273.14 interest thereon from the time of the collision, he ordered judgment, with costs. Judgment was entered as ordered.

*John H. Reynolds* for the appellant. The referee erred in holding that the ascending steamer had the arbitrary right to give the first signal and direct the course of both vessels. (*St. John* v. *Paine*, 10 How., 585; *The Santa Claus*, Olcott R., 436; 3 Kent Com., 230; Pilot Rules, rule 1; U. S. Sailing Reg. in act of congress of 1864, arts. 19 and 20; U. S. steamboat act of Aug. 30, 1852.) It is the first duty of a steam vessel meeting another to avoid a collision if possible; hence none of the several rules prescribing the courses of vessels are inflexible. (Pilot Rules, Nos. 2 and 21; *The Relief*, Olcott R., 104; *Ogdensburgh*, 1 Newb., 139; *Amita*, id., 492; *The Belville, etc.*, id., 447; *Wings of the Morning*, 5 Blatch., 15; *Batton* v. *H. R. R. R. Co.*, 18 N. Y., 248; *Suydam* v. *Gd. St. and N. R. R. R. Co.*, 17 Abb., 304; *The Sapphire*, 11 Wall., 164; *C. C. Vanderbilt*, Abb. Adm., 361; *St. John* v. *Paine*, 10 How. U. S., 585; *The Lyon*, Sprague R., 40; *Williamson* v. *Barrett*, 13 How. U. S., 19; *The Osprey*, Sprague, 245; *The Ann Caroline*, 2 Wall., 538; 1 Parsons Mar. Law, 202, note 3, cases cited; *Hawkins* v. *Dutchess and O. Steamboat Co.*, 1 Wend, 434; *Hunt* v. *Hoboken Land Im. Co.*, 1 Hilt., 165.) The collision was the

result of plaintiff's negligence, and was unavoidable on the part of defendant. (U. S. Sail. Reg., rules 2, 3, 4; *Propeller Gratitude*, 3 Ben. Adm. R., 108; *Millon* v. *Smith*, 2 E. D. Smith, 472.) It was error to allow the probable loss of profits of the vessel from the result of the collision while she was disabled. *The Ann Caroline*, 2 Wall., 538.)

*W. A. Beach* for the respondent. This court will be governed by the findings of the referee, the evidence being abundant to sustain his conclusion. (*Marco* v. *Liverpool and L. F. and L. Ins. Co.*, 35 N. Y., 664.) The facts found demonstrate defendant's liability. (*Hoffman* v. *Union Ferry Co.*, 47 N. Y., 176.) The case not professing to contain all the evidence, it will be presumed that the referee's findings of fact are sustained by satisfactory proof. (*Grant* v. *Morse*, 22 N. Y., 323; *Carman* v. *Pultz*, 21 id., 547; *Mead* v. *Bunn*, 32 id., 275.)

GRAY, C. Unless the judge at circuit would, upon all the evidence in this case, have been authorized to have taken it from a jury upon the ground that negligence, chargeable to the Griswold or its tow, contributed to the collision, we are without jurisdiction to disturb the finding that it did occur without contributory negligence on the part of either of them. The regulations for the government of pilots required that the Griswold should have side lights. She had none. It cannot be denied that the omission to comply with this regulation was a negligence rendering the owners of the Griswold liable for all damages resulting from their non-compliance with it; but unless the collision resulted from the absence of the side lights, or their absence contributed to the disaster, the omission to provide and use them is not a matter in extenuation of or in defence of the defendant's wrong. These lights were not required for use in daylight. When the collision occurred it was very clear moonlight; so clear that, shortly before it occurred, the tow of the Griswold was seen by the crew and wheelsman of the St. John, at a

distance of two miles. The St. John, when passing the Griswold, was 100 feet west of her, and would, had she kept her course, and not sheered in toward the tow, have passed it without harm to either. The evidence at least tended to prove that the injury resulted solely from causes other than the lack of side lights; and hence it became a question of fact, and not exclusively of law (*Hoffman* v. *The Union Ferry Co., Brooklyn*, 47 N. Y., 176); and, in the absence of any evidence that the St. John was misled by the want of these lights, the inference is so clear that the absence of them did not contribute to the injury that we ought not, if we had the power, to disturb the finding.

The plaintiff lost the use of his boat while undergoing repair, as well as the interest upon the cost of the repairs, and was entitled to recover the loss he sustained thereby.

The judgment should be affirmed.

All concur.

Judgment affirmed.