GEORGE M. AUTEN, Appellant, v. JAMES GORDON BENNETT, Respondent.

1. TRIAL — OFFER OF EVIDENCE — ERRONEOUS DISMISSAL OF COM-PLAINT. Where the plaintiff on the trial of an action offers to prove certain facts, all of which constitute competent proof under the complaint, which states a good cause of action, but also offers to introduce proof of facts that are only competent as evidence in rebuttal in the event of the defendant seeking to establish certain allegations of his answer, it is erroneous for the trial court to sustain an objection thereto and dismiss the complaint. The plaintiff should be permitted to introduce all evidence competent under the complaint as framed and the offer; the defendant should then be required to put in his proofs and thereafter the plaintiff be permitted to introduce his evidence in rebuttal.

2. CHARTER PARTY — WHEN CONSIDERED A LEASE OR DEMISE OF THE VESSEL. Although a charter party will not be considered as a lease or demise of a ship for the time being, but as a contract of affreightment, unless the intention to transfer the possession and ownership to the charterer is unequivocally manifested by the contract, where by the terms thereof the owner agrees to deliver the vessel at a certain port and the charterer agrees to return her to the same port in as good condition as when she was received, and where, in an action by the owner to recover for a breach of the contract by the charterer, the defendant in his answer states the object in executing the charter party to be the placing of the vessel in the control of the defendant for certain purposes, the conclusion is warranted that there was a demise of the vessel for the period contemplated by the contracting parties notwithstanding a provision in the contract that the owner would pay the wages of the crew.

*Auten* v. *Bennett*, 98 App. Div. 627, reversed.

(Argued January 23, 1906; decided February 6, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 23, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Leopold Leo* and *Robert P. Orr* for appellant. The complaint is ample and entitles plaintiff to show demise of the

yacht to defendant and control and navigation by him. (*Bregman* v. *Kress*, 83 App. Div. 1; *R. R. Co.* v. *Robinson*, 133 N. Y. 242. A charter party like any other agreement stands upon its own peculiar provisions which cannot be overriden by provisions implied by law in cases where none are expressed by the parties. (*Brett* v. *H.· & H. Co.*, 83 Hun, 558; *Belcher* v. *Capper*, 4 M. & G. 502.) The possession of the yacht was in defendant. (*Trinity House* v. *Clark*, 4 M. & S. 288; *Sandemann* v. *Scurr*, L. R. [2 Q. B.] 86; *Baumwoll* v. *Gilchrest*, 62 L. J. Q. B. 201; *Newberry* v. *Colvin*, 1 Cl. & F. 283.)

*Robert W. Candler*, *William Jay* and *Flamen B. Candler* for respondent. The trial court properly held that the plaintiff's right to recover, if at all, was under the pleadings as they stood, and that testimony could not be given to affect the construction of the charter. (*Gray* v. *Meyer*, 88 App. Div. 359; *Home Ins. Co.* v. *Con. Ins. Co.*, 89 App. Div. 1; *Mead* v. *Dunlevie*, 174 N. Y. 108; *Jamestown B. C. A.* v. *Allen*, 172 N. Y. 291.) The Appellate Division and trial court properly held that under the terms of the charter there was no demise of the vessel to the defendant, and that the defendant was not an insurer. (*Baldwin* v. *S. T. Co.*, 142 N. Y. 279, 284; *Raymond* v. *Tyson*, 17 How. [U. S.] 53, 59; *Work* v. *Leathers*, 97 U. S. 379; *The Caledonia*, 157 U. S. 124; *Haulenbeek* v. *Hunt*, 94 App. Div. 47; *The New York*, 93 Fed. Rep. 495; *The Southwark*, 191 U. S. 1·; *Hagar* v. *Clark*, 78 N. Y. 45; *Anderson* v. *Boyer*, 13 App. Div. 258; *Brown* v. *Gray*, 24 N. Y. Supp. 61.)

EDWARD T. BARTLETT, J. The plaintiff, as the assignee of the cause of action of Charles H. Merrill, the owner of the steam yacht "Mindora," brings this action to recover damages arising out of the alleged breach of the charter party, whereby the use of said yacht was granted to the defendant, as will more fully appear by the contract which reads as follows:

32

"This is to certify that I, Chas. H. Merrill, of Exeter, New Hampshire, do hereby agree to charter my steam yacht Mindora to the New York Herald for two months, or longer, and it is also agreed that the New York Herald has the privilege of extending the charter for as long a period of time as they wish at the expiration of the two months; it is agreed that this charter commences on the 10 day of June and expires on the 10 day of August, unless otherwise previously arranged. The consideration of this charter is Three Thousand Dollars per month ($3,000) and I, Chas. H. Merrill, do agree to furnish boat, pay crew's wages not to exceed $800 per month, and uniforms, and agree to deliver the Mindora at New York. The New York Herald agrees to furnish all supplies, also a Marine and Fire Insurance, also insure the yacht against the perils of war and return her in as good condition as when she was received, free from all debts whatsoever. It is also agreed that the New York Herald returns the yacht to New York.

"(Signed)          WILLIAM C. REICK,
                    "for JAMES GORDON BENNETT,
               "CHARLES H. MERRILL."

The plaintiff alleges that the defendant is in breach of his contract by reason of the fact that he failed to return the yacht in as good condition as when she was received; that as matter of fact the defendant returned and re-delivered said yacht in a damaged condition which necessitated considerable repairs, materials and labor, whereby the plaintiff's assignor was damaged in the aggregate sum of $3,133.41. This case has been twice tried; the first trial resulted in a verdict for plaintiff for $4,000; the judgment entered thereon was reversed by the Appellate Division and a new trial ordered. At the second trial the complaint was dismissed on the merits at the close of plaintiff's case.

The issues are exceedingly simple and confined, as the learned trial judge stated on the second trial, to the charter party, which stands as the sole contract between these litigants. The course of the second trial proceeded to some

extent outside of the real issues by reason of the evidence offered by plaintiff, and resulted in questions that were not properly in the case under the pleadings.

The complaint in this action is well drawn and confines the issues to the charter party.  The burden of proof under which the plaintiff rested was to establish that the yacht had been duly delivered to the defendant in a seaworthy condition, and that he had accepted her and she continued in his custody until about the 22nd of August, 1898, when, in violation of the charter party, she was returned in a damaged condition ; that the damages amounted to a certain sum ; that the cause of action arising under this breach of the charter party was duly assigned to the plaintiff, George M. Auten.   Thereupon the defendant under his answer was called upon to prove, if he could, that he was not in breach of the contract by reason of returning the yacht in a damaged condition, and that he had suffered damages growing out of the unseaworthiness and inability of the yacht to continue in the service of the defendant during the two months and more covered by the contract. The defendant would also be called upon to prove the amount of these alleged damages which he seeks in his answer to recoup and set off against any claim which the plaintiff might establish.   It would thereupon become incumbent upon the plaintiff to rebut this evidence of the defendant, if possible, and to establish that during all the time that the defendant was using the yacht as a news boat in the Spanish war she was seaworthy and in good condition ; that if repairs were necessary it was due not to any defects in the yacht, but rather to the severe service in which she was engaged, which involved a high rate of speed in all kinds of weather, or any other conditions constituting evidence in rebuttal.

At the trial the plaintiff swore the marine engineer who had charge of the yacht during this southern cruise under the charter party.   As there is an implied warranty under every charter party that the vessel to which it relates is seaworthy, it was proper for the plaintiff to show, as he did by this witness, that he had made a thorough examination of the yacht

just prior to her delivery to the defendant and found her sea-worthy. It was also proper for him to prove that the yacht had been duly delivered to the defendant or his agent under the charter party, and the same duly accepted, and that on a certain day she left New York and started on her voyage to the West Indies. It was at this point in his proofs that the plaintiff departed from the issues as framed and sought to show that certain accidents to the machinery of the yacht during her cruises, when in the custody of the defendant under the charter party, were due to causes other than her unseaworthiness and inability to continue in the service of the defendant. This testimony was objected to by the defendant and the court sustained the objection. The court very prop-erly reminded the counsel for plaintiff that the evidence offered was entirely outside of the charter party and the alle-gations of the complaint, and that if he wished to introduce it he could withdraw a juror and apply for leave to amend the complaint. This course was not adopted by the plaintiff, but the result was that, under the suggestion of the court, he made an offer to prove certain facts, which was objected to by the defendant's counsel, and the court sustained the objection and dismissed the complaint on the merits. In this offer the plain-tiff proposed to show that the yacht was not returned in as good condition as when she was delivered to the defendant; that when she was delivered she was a staunch, seaworthy vessel, capable of making twelve knots an hour; that when she was returned she was thoroughly examined by witnesses who saw her before she went out and found her damaged in her hull and in her machinery, spars and sails to the value, in making the necessary repairs to restore her to the condition in which she was when delivered to the defendant, of $4,800.00, exclusive of interest. All this was competent proof under the complaint as drawn. It is true that the plaintiff also offered to introduce proof of facts that were really a part of his evi-dence in rebuttal, assuming that the defendant sought to establish the allegations of his answer to the effect that the condition of the yacht was such that she was unseaworthy and

unable to meet the requirements of the charter party. · It was clearly error for the trial judge to dismiss the complaint on the merits, but he should have permitted the introduction of all competent evidence under the complaint as framed and the offer, then should have required the defendant to put in his proofs and thereafter permitted the plaintiff to swear his witnesses in rebuttal.

A question of law is presented on the face of this charter party which was decided by the Appellate Division on the appeal from the judgment entered on the first trial. This judgment is not directly before us on this appeal, but, as it is a controlling authority binding upon the trial judge, it is proper that we should consider it, as we are unable to agree with the construction of the charter party adopted by that learned court. The legal question presented is whether the owner was bound to deliver to the defendant the absolute control of the yacht or whether the owner remained in control and accepted the responsibilities of such ownership. It is undoubtedly the presumption that the ownership of a vessel even during the period covered by a charter party continues in the general owner; and, unless the intention to transfer the possession and ownership to the charterer is unequivocally manifested by the contract, a charter party will not be .considered as a lease or demise of a ship for the time being, but as a contract of affreightment.

In *Reed* v. *United States* (78 U. S. 591, 600) the court states as follows: " Charterers or freighters may become the owners for the voyage without any sale or purchase of the ship, as in cases where they hire the ship and have by the terms of the contract, and assume in fact, the exclusive possession, command, and navigation of the vessel for the stipulated voyage. But where the general owner retains the possession, command, and navigation of the ship and contracts for a specified voyage, as, for example, to carry a cargo from one port to another, the arrangement in contemplation of law is a mere affreightment sounding in contract and not a ·demise of the vessel, and the charterer or· freighter is

not clothed with the character or legal responsibility of ownership."

In *Sandeman* v. *Scurr* (L. R. [2 Q. B.] 86, 96) Chief Justice COCKBURN, after pointing out the result of a long line of authorities in regard to the two kinds of charter party, says: "In the first case, the charterer becomes for the time the owner of the vessel, the master and crew become to all intents and purposes his servants, and through them the possession of the ship is in him. In the second, notwithstanding the temporary right of the charterer to have his goods loaded and conveyed in the vessel, the ownership remains in the original owners, and through the master and the crew, who continue to be their servants, the possession of the ship also."

The Appellate Division on the first appeal held that under the terms of the charter party there was no demise of the yacht "Mindora" to the defendant and that the latter was not an insurer. We are of opinion that the very plain reading of the charter party leads to a contrary result. A charter party is nothing more than an agreement between parties and is to be construed in the same manner as any other contract. In the charter party we are considering the owner agrees to *deliver* the "Mindora" at New York; the defendant agrees to *return* her in as good condition as when she was received; he also agrees to make the return in the city of New York. It would seem as clear as language can make it that the yacht was to be delivered to the defendant and returned by him to the owner at the expiration of the time provided for in the charter party.

Much reliance is placed by the defendant upon the clause in the charter party that the owner agreed to pay the crew's wages not to exceed $800.00 per month. This clause is often found in charter parties, even where it is conceded that there was a demise of the vessel during the voyage contemplated. A case wholly in point is that of *Master, etc., of the Trinity House* v. *Clark* (4 Maule & Selwyn's Reports, 288, 298). The *Trinity House* was chartered by the government to

transport troops from England to some foreign country, and the question arose whether the government for the time being was the owner of the ship for all intents and purposes as to the payment of certain fees in different ports. One of the points relied upon by the counsel for the crown was the fact that the master and crew of the vessel were paid by the owners. Lord ELLENBOROUGH, Chief Justice, commenting upon this point, said: "In truth the supposed reservation of the possession to the master and crew is not exclusive, as is contended for. The occupation of the different habitable parts of the ship is arranged by the terms of the contract, and a place provided for the residence of the agent for the Crown. The whole argument appears to rest on a fallacy; the possession, such as it is, of the master and the crew, is not retained by the proprietors of the ship to restrain or interfere with the full and free use of the ship, which they have let to hire for a term, but as subsidiary and subservient to such use. It is not only consistent with the entire ownership and possession of the vessel on the part of the Crown during the period for which it is let, but it is a farther means provided to enable the Crown fully and beneficially to enjoy the same by letting at the same time out to the Crown the services likewise of those by whom the vessel might be best conducted under the direction of the Crown in the prosecution of the object for which the Crown hired it. The vessel, therefore, is not only hired, but along with it the services also of a certain number of persons paid by the proprietors, and these services are necessary to the use of the vessel, which the proprietors have expressly warranted to the Crown. It is the same thing as the hire of a waggon and team for a certain term, the proprietor of the waggon stipulating that the waggon should be driven, and the horses taken care of, by his own waggoner and boy, whom he was to feed. In such a case it could hardly be made a question that the waggon and team were in the possession of the hirer during the harvest or whatever the term might be for which they were hired." There are other provisions of the charter party which confirm this con-

struction of the contract. The charterers were to furnish all supplies ; also take out marine and fire insurance ; also insure the yacht against the perils of war.

The defendant interposed a lengthy answer, in which he alleges, among other things, " that being desirous of chartering a staunch, seaworthy and fast-going boat as a dispatch boat, to be used in gathering news in southern waters and in the West Indian Islands, in regard to the late Spanish War, to be transmitted to the New York Herald by telegraph and cable for publication in the defendant's newspaper, known as the New York Herald, it was represented to the defendant or his agent, by or on behalf of the said Charles H. Merrill mentioned in the said complaint, that he the said Charles H. Merrill was the owner of the yacht Mindora referred to in the said complaint, and that she was a staunch, seaworthy and fast-going boat and could make at least twelve knots an hour, and would be suitable for the services desired by the defendant as a dispatch boat." We are thus informed by the pleadings that the object in executing the charter party was to place this yacht in the control of the defendant for the purposes above stated.

We are of opinion that the charter party on its face, and the purposes for which it was executed, lead to the conclusion that there was a demise of the yacht for the period contemplated by the contracting parties.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

Cullen, Ch. J., Gray, O'Brien, Werner, Hiscock and Chase, JJ., concur.

Judgment reversed, etc.