(121 App. Div. 326.)

DUNBAR & SULLIVAN DREDGING CO. v. TITLE GUARANTY & TRUST CO., OF SCRANTON, PA.

(Supreme Court, Appellate Division, Fourth Department. September 25, 1907.)

1. BAILMENT—AGREEMENT TO REPAIR—ACTIONS—MEASURE OF DAMAGES.

The failure of the lessee of a dredging outfit to comply with the terms of the lease, whereby he agreed, besides paying rent for the use of the outfit, to make repairs and return the property in as good condition as when received, entitled the lessor, who regained possession of the property and made partial repairs, to recover the cost of these repairs and all those still necessary to restore the outfit to as good condition as when delivered, less the depreciation resulting from its ordinary use during the leased term, and for the value of the use of the property for the time it was lying idle because of being repaired, together with interest on these amounts, on the condition, however, that the expense of repairing any part of the property does not exceed the original value thereof, or involve an expense greatly disproportionate to the amount of its depreciation by reason of its injury.

2. SAME.

Where boats leased were not repaired as agreed by the lessee, and the lessor made a part of the repairs, in the making of which it was necessary to prepare the boats for dry dock and to dry-dock them, the lessor cannot recover the expense of preparing for dry dock and of dry-docking the boats, incurred in making the partial repairs, and also recover the expense of performing these acts again in order to complete the repairs; no reason appearing why all the repairs could not have been made when the boats were first docked.

Kruse, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by the Dunbar & Sullivan Dredging Company against the Title Guaranty & Trust Company of Scranton, Pa., to recover on a bond given to secure the performance of a contract. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Plaintiff's action is based upon a breach of the covenants contained in a bond which defendant gave to plaintiff to secure the performance of certain agreements contained in a contract which plaintiff made with the Donnelly Contracting Company contemporaneously with the execution and delivery of the bond. By this contract plaintiff, the owner, leased to the Donnelly Company tools and accessories, consisting of tugs, scows, and a dredge, with spare parts and appliances, for use by the latter company during the dredging season of 1904. In addition to paying rent for the use of this property, the Donnelly Company, among other things stated in the contract on its part to be performed, agreed to replace immediately parts when broken, and make repairs, and do all things necessary to maintain the property in a condition equal to that in which it was when the lessee received it. It further agreed to return the leased property to the lessor, the port of return to be that one, of the two designated in the contract, selected by the lessor; and the lessee was before return to cause the scows and dredge, called plant 1, to be docked, calked, and generally repaired at its expense, so as to render that plant in a condition equal to that in which it was received. It further in express terms warranted the return of all and every part of the leased property in a con-

dition equal to that in which it was received. The condition of the plant was also particularly described, and the value of each vessel forming a part of it agreed upon. A standard, by which to gauge both the condition of the separate items of the plant when the property should be returned, and the value of such items as the lessee by reason of loss might be unable to return, was thus established. The property, when it again came into the lessor's possession, required extensive repairs to place it in the condition it was when the lessee received it. Meanwhile the lessee had become bankrupt, and both the lessee and the defendant, its surety, failed to restore by repair the property to the condition required by the contract. Plaintiff, after regaining possession of the leased property, made partial repairs upon the plant, and thereafter began this action to recover of the surety company the damages claimed to have been sustained by reason of the lessee's defaults, for which defendant was liable as surety. These items of damages included, among other things, the expense incurred by plaintiff in making partial repairs of the scows, tugs, and dredge forming part of the leased plant, and also the amount claimed to be necessary to complete these repairs. Defendant's answer admits liability to plaintiff on its bond, and puts in issue only the amount of damages which plaintiff is entitled to recover; and on this appeal defendant assails the judgment appealed from only so far as it includes the sum of $20,200, allowed by the referee as the amount necessary to complete the repairs on these vessels.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

W. H. Cuddeback, for appellant.

T. C. Slee, for respondent.

ROBSON, J. In fixing the damages to be awarded plaintiff, the referee adopted the rule of damages applied in admiralty cases, and allowed the cost of repairs already made by plaintiff and those yet to be made to restore the boats to the condition they were when leased, and for the idle time of boats while repairs were being made, together with interest on these amounts. We think that this rule, adopted by the referee, is correct, both because it is clearly within the terms of the agreement itself, as embodied in the language of the contract, and also, even if not so verbally expressed, it would, as matter of law, have been implied as the proper rule of damages to be applied in this case. Auten v. Bennett, 183 N. Y. 496, 76 N. E. 609. Plaintiff's loss for lay time of the boats while undergoing repairs, as well as interest upon the sums awarded for repairs and lay time, were proper items for which plaintiff was entitled to allowance in fixing the amount of its damages. Whitehall Co. v. N. J. Steamboat Co., 51 N. Y. 369–373; Mailler v. Express Propeller Line, 61 N. Y. 312–316.

The application of this rule made by the referee in his decision of the case has, however, resulted, as we conceive, in error which requires a reversal of the judgment entered on his report. When these vessels were returned in the condition already adverted to, the plaintiff was then entitled to recover all the expense necessarily and properly required in repairing them, so that their condition should be equal to that in which they were received, less, of course, the depreciation resulting from the ordinary use of the same during the term for which they were leased, and, of course, also providing as a further condition that the expense of repairing any one of them should not exceed its original value, and, further, should not involve an expense greatly

disproportionate to the amount of its depreciation by reason of its injury. Petty v. Merrill, 9 Blatchf. (U. S.) 447, Fed. Cas. No. 11,050. It does not appear that the amounts which the referee has allowed for present repairs, actually made, and the additional repairs necessary to restore any one of these vessels to its condition at the time the lease took effect, either exceeded its actual value or was greatly disproportionate to the amount of its depreciation by reason of its injury; but it does clearly appear that the referee, in determining the value of future repairs, included as a material item thereof·a charge which, under the circumstances of the case disclosed by the evidence, could not properly be considered in arriving at that amount.

When the boats were returned to plaintiff the measure of defendant's liability was, as we have said, excluding for the present consideration of charges for lay or idle time while repairs were being made, limited to the cost of repairs necessary to restore them to their condition at the time they were leased. Most of these vessels, in order that complete repairs could be made thereon, required either that they should be dry-docked or in some way taken from the water. In making the partial repairs, for which plaintiff has recovered, as one of the items of damages awarded by the referee there is included the expense of dry-docking each of the scows included in the leased plant. Before the scows were placed on the dry dock it was necessary to remove the heavy iron doors, which closed the bottoms of the pockets in these scows. This process was attended with considerable expense. The expense of dry-docking each of these scows, after it was prepared for placing on the dry dock, is, as we gather from the evidence in the case, from $500 to $1,000. The expense of preparation of the scow for placing on the dock, and the expense of dry-docking itself, are not necessary expenses of repairs, unless necessarily incident to the actual repairs themselves. The expense of preparing these scows for the dry dock, and also the expense of docking them, are included in the partial repairs to them, which plaintiff made, and for which it has recovered.

No satisfactory reason appears why the whole repairs could not then have been completed, which would have subjected defendant to the expense of a single preparation for and docking of each scow, except that, as it is urged, defendant immediately required the boats for lease, or use, during the ensuing dredging season. While this may be true as to some of the scows, it certainly cannot be urged as to the scows Monroe Doctrine and Reciprocity; for they were both laid up at defendant's dock immediately after the partial repairs on them were completed, and, so far as appears, so continued during the remainder of the season. Notwithstanding this fact, and notwithstanding the further fact that the evidence does not disclose that the idle time, which would have ensued if complete repairs had been made upon the scows, which were put into actual service by defendant on completion of partial repairs thereon, would have offset the charge for redocking, the referee appears to have allowed, as a part of the estimated expense of making complete repairs, the expense of redocking at least three of these scows. If the expense of a second docking can be allowed

against defendant as a part of the expense of additional repairs, when it appears that all repairs could have been completed when the scows were first docked, it would seem that the expense of a third, or even a fourth, docking could with equal justice be charged to it, if plaintiff saw fit to continue at intervals to make only partial repairs. This additional and apparently unnecessary and unwarranted expense, included in the damages awarded for future repairs, is a considerable one; but we are unable from the evidence to determine with any degree of accuracy its amount. We are therefore constrained to direct a reversal of the judgment and grant a new trial, with costs to abide the event.

Judgment reversed upon the law and facts, and a new trial ordered, with costs to abide the event. All concur, except KRUSE, J., who dissents.