DOMINICK MUSCELLI, Respondent, *v.* FREDERICK STARR CONTRACTING COMPANY, Appellant.

Argued February 18, 1947; decided May 22, 1947.

*J. Charles Weschler* and *Walter T. Kohn* for appellant. I. The construction of the charter party is for the court. If by its terms, there was a complete demise of the vessel the charterer became its owner *pro hac vice* for the period of the service and became liable for all claims *ex contractu* or *ex delicto* and the general owner was freed of all responsibility. The same rule is applicable to charters of nonpower boats. (*The Allianca,* 290 F. 450, 294 F. 1020, 264 U. S. 593; *Leary* v. *United States,* 81 U. S. 607; *Auten* v. *Bennett,* 183 N. Y. 496;

*Hagar* v. *Clark,* 78 N. Y. 45; *Graves* v. *Davis,* 235 N. Y. 315; *United States* v. *Cornell Steamboat Co.,* 267 U. S. 281; *Brooklyn Ash Removal Co.* v. *Connell,* 225 N. Y. 503; *Dailey* v. *Carroll,* 248 F. 466; *Ira S. Bushey & Sons* v. *W. E. Hedges & Co.,* 40 F. 2d 417; *O'Boyle* v. *McGirr Bros.,* 39 F. 2d 637; *The Nat E. Sutton,* 42 F. 2d 229; *Monk* v. *Cornell Steamboat Co.,* 198 F. 472.) II. Plaintiff's employer being in complete and exclusive control of the derrick at the time of the accident and for five months prior thereto as the result of a demise under a charter party, defendant owner is not responsible in this action to an employee of the charterer for the derrick's condition nor for any defects thereon at the time it was chartered. (*Scarff* v. *Metcalf,* 107 N. Y. 211; *Anderson* v. *Boyer,* 156 N. Y. 93; *Dooley* v. *Healey,* 95 App. Div. 271; *Naposki* v. *McAllister Lighterage Line, Inc.,* 232 App. Div. 802, 257 N. Y. 611; *Kohrn* v. *Boyer Lighterage Corp.,* 262 App. Div. 762; *Barbaro* v. *Auditore Contracting Co.,* 215 App. Div. 595; *Barnevo* v. *Munson S. S. Line,* 239 N. Y. 486; *Lloyd* v. *Hedger Transportation Corp.,* 270 N. Y. 617, 302 U. S. 762; *Kuhn* v. *City of New York,* 274 N. Y. 118; *Murrain* v. *Wilson Line,* 270 App. Div. 372; *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85; *The Spokane,* 294 F. 242, 264 U. S. 583.) III. Liability in tort is an incident to occupation and control and even if defendant had notice of defects in the vessel at the time it chartered it to " Colonial ", it was exempt from liability. (*The Allianca,* 290 F. 450, 294 F. 1020; *Caldarola* v. *Moore-McCormack Lines,* 295 N. Y. 463; *Cullings* v. *Goetz,* 256 N. Y. 287; *Lafredo* v. *Bush Terminal Co.,* 261 N. Y. 323; *Campbell* v. *Holding Co.,* 251 N. Y. 446; *Kilmer* v. *White,* 254 N. Y. 64; *Bruszaczynaska* v. *Ruby,* 267 App. Div. 540; *Antonsen* v. *Bay Ridge Savings Bank,* 266 App. Div. 164; *Kushes* v. *Ginsberg,* 99 App. Div. 417, 188 N. Y. 630; *Sterger* v. *Van Sicklen,* 132 N. Y. 499; *Reynolds* v. *Van Beuren,* 155 N. Y. 120.) IV. Breach of a warranty of seaworthiness does not operate to create a cause of action against an owner for personal injuries to the employees of a charterer *pro hac vice.* (*Maleeny* v. *Standard Shipbuilding Co.,* 237 N. Y. 250.)

*John J. Welsh* and *Thomas J. Gonsalves* for respondent. I. The complaint states a good cause of action against defendant owner on account of its breach of its requisite warranty of sea-

worthiness at the time of the charter. (*De Pinto* v. *O'Donnell Transportation Co.*, 293 N. Y. 32; *Cullings* v. *Goetz*, 256 N. Y. 287; *Socony-Vacuum Co.* v. *Smith*, 305 U. S. 424; *The Arizona Anelich*, 298 U. S. 110; *The Max Morris*, 137 U. S. 1; *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96; *The Osceola*, 189 U. S. 158; *Rainey* v. *N. Y. & P. S. S. Co.*, 216 F. 449; *Connors* v. *King Line, Limited*, 98 App. Div. 261.) II. The fact that the charter constitutes a demise does not interfere in any respect with the obligation of the owner to furnish a seaworthy boat at the time of the chartering. A demise does not extinguish the owner's duty to warrant seaworthiness. (*Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85; *Work* v. *Leathers*, 97 U. S. 379; *Haulenbeek* v. *Hunt*, 49 App. Div. 47; *Auten* v. *Bennett*, 88 App. Div. 15; *Wilson* v. *Griswold*, 30 Fed. Cas. No. 17,806, 9 Blatchf. 267; *Cullen Fuel Co.* v. *Hedger Co.*, 290 U. S. 82; *The Sagamore*, 300 F. 701; *New York, N. H. & H. R. R.* v. *Delaware, L. & W. R. R. Co.*, 23 F. 2d 487; *Dempsey* v. *Downing*, 11 F. 2d 15; *Penn Builders Supply Co.* v. *Braeburn Steel Co.*, 274 F. 794; *The Harper*, 42 F. 2d 161.) III. The complaint states a good cause of action on common-law liability. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Cahill* v. *Inecto, Inc.*, 208 App. Div. 191; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170; *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85; *Connors* v. *King Line, Limited*, 98 App. Div. 261; *Cook* v. *N. Y. Floating Dock Co.*, 1 Hilton 436; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124; *Priolo* v. *Southard W. & T. Co.*, 198 N. Y. 528; *Devlin* v. *Smith*, 89 N. Y. 470; *Murphy* v. *Rochester Tel. Co.*, 208 App. Div. 392; *Swords* v. *Edgar*, 59 N. Y. 28; *Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404.)

DESMOND, J. Plaintiff's complaint alleges that he, while employed by a corporation other than defendant and while boarding, by defendant's invitation, a derrick boat owned by defendant but chartered to plaintiff's employer, was injured when part of the deck or side of the craft gave way. The part of the boat which collapsed had been, according to the complaint, allowed by defendant to be and remain in an unsafe condition for a long time before the accident. Defendant served its answer, then moved on affidavits for summary judgment dismissing the complaint. The motion was denied. The Appel-

late Division affirmed the order but granted defendant leave to appeal to this court, certifying questions which call for a decision from us as to whether or not defendant was, as matter of law, entitled to judgment of dismissal.

From the pleadings, the moving affidavits and the countering affidavits, there emerges a picture, complete and undisputed for present purposes, of the relation between the parties and the cause of this injury. Plaintiff, employed by a sand and gravel company, had gone to work on the vessel when his employer chartered it from defendant, about five months before the accident. The " wearing strip " which broke or collapsed when plaintiff stepped upon it, was a sort of outside planking around the craft and was in bad condition when plaintiff's employer took possession under the charter.

The charter, which was in writing, recited that the hiring was on a " daily bare boat " basis. It required the charterer (plaintiff's employer) to make at its expense " all repairs and changes both to hull and machinery " and, at the end of the charter period, to return the craft to defendant in as good condition as when taken, ordinary wear and tear excepted. The derrick boat had no motive power (see *Brooklyn* v. *Connell,* 225 N. Y. 503, 505). It is entirely clear, if not conceded, that this was a demise charter, one where the entire control and possession of the vessel, and subsequent control over her navigation is " surrendered to the charterer " who thus becomes her " special owner " (*Leary* v. *United States,* 14 Wall. [U. S.] 607, 611). Such a charterer is clothed with " the character or legal responsibility of ownership " (*Reed* v. *United States,* 11 Wall. [U. S.] 591, 601) and is the owner for the voyage without any sale or purchase of the ship (*United States* v. *Shea,* 152 U. S. 178, 186, cited in *Auten* v. *Bennett,* 183 N. Y. 496, 501). Such a *pro hac vice* ownership, we think, casts all responsibility onto the charterer, and makes it impossible to hold defendant, the actual owner, liable here.

It is clear that if we were governed by common-law rules defendant, as an owner long out of possession, would have no legal responsibility for the perilous condition (*Mayor of Albany* v. *Cunliff,* 2 N. Y. 165, 181; *Kilmer* v. *White,* 254 N. Y. 64; *Cullings* v. *Goetz,* 256 N. Y. 287; see *Caldarola* v. *Moore-McCormack Lines,* 295 N. Y. 463). Plaintiff, however, seeks support in the

law maritime, for his theory of action. "The complaint" argues plaintiff's brief, "states a good cause of action * * * on account of its [defendant's] breach of its requisite warranty of seaworthiness at the time of the charter." There is, of course, no question but that, at maritime law, the "owner" of a ship impliedly but absolutely covenants that she is seaworthy for her intended voyage (*Scarff* v. *Metcalf*, 107 N. Y. 211; *The Osceola*, 189 U. S. 158). But it does not follow that the actual owner, hiring out his ship and surrendering all possession and control, remains, nonetheless, liable on that implied covenant to third parties, with whom he is not in privity. None of the cases go nearly that far and there is much authority, direct or suggestive, the other way.

The cases pressed upon us by plaintiff deal with other situations. *Seas Shipping Co.* v. *Sieracki* (328 U. S. 85), while it enlarged the category of those to whom an owner owes the duty, had to do with the liability of an owner actually operating the vessel, not an owner out of possession, like defendant. *Work* v. *Leathers* (97 U. S. 379), *Cullen Fuel Co.* v. *Hedger Co.* (290 U. S. 82) and *Pendleton* v. *Benner* (246 U. S. 353) were suits by charterers against actual owners, on the latter's implied contract with the former to furnish ships seaworthy for the intended voyages or services. *De Pinto* v. *O'Donnell Transportation Co.* (293 N. Y. 32) is not in point since there the owner apparently abandoned, on the trial, its contention that it was free from liability because the charter amounted to a demise. A probable reason for that change of position in the *De Pinto* case is found in the proof in that record that the actual owner, though out of possession, was still under an express contractual duty to inspect and repair. Nor are the in rem cases (such as *The Spokane*, 294 F. 242, certiorari denied 264 U. S. 583, or *The Arizona* v. *Anelich*, 298 U. S. 110) helpful, since it is undisputed that the personified ship itself, as distinguished from her owner remains liable in rem regardless of ownership, possession or charter.

So much is said in the briefs about *Seas Shipping Co.* v. *Sieracki* (*supra*) that we add a further comment thereon. The Supreme Court's opinion carefully pointed out (328 U. S. at p. 89) that the precise question was "whether the ship-

owner's obligation of seaworthiness extends to longshoremen injured while doing the ship's work aboard but employed by an independent stevedoring contractor whom the owner has hired to load or unload the ship." The court announced that the humanitarian policy of the unseaworthiness rule is not to be " confined to seamen who perform the ship's service under immediate hire to the owner, but extends to those who render it with his consent or by his arrangement." In the present case there was no relationship whatever between plaintiff and defendant. Plaintiff rendered no service, direct or indirect, to defendant, and defendant had nothing to do with plaintiff's presence on the derrick boat (the allegation in the complaint that plaintiff " was invited " by defendant to go upon the boat does not mean, it is conceded, an actual or express invitation). Further on in the opinion in the *Sieracki* case, the Supreme Court said that the seaworthiness guaranty extends to persons like stevedores, " intermediately employed " to do the traditional work of seamen, and that the owner's " consent to performance of the service " defines the boundary of the class to whom the duty is owed. The only " owner " in our case who consented to plaintiff's presence on the ship, or employed him, directly or " intermediately ", was the *pro hac vice* owner, the demise charterer, not defendant. Finally, at page 97 of its opinion, the Supreme Court held that the liability for Sieracki's accidental injuries arose as an incident " of performing the ship's service with the owner's consent." That could not validly be applied to defendant here.

A charterer under a demise charter, that is, a charterer who is in full command and custody of the ship, is the owner *pro hac vice* with all the rights and obligations of an owner (*Leary* v. *United States, supra; Scarff* v. *Metcalf*, 107 N. Y. 211, 217, *supra;* see *Hagar* v. *Clark*, 78 N. Y. 45, 50). Such a charterer is the " owner of the ship for all intents and purposes " (see *Auten* v. *Bennett, supra,* 183 N. Y. at p. 503). Liability for unseaworthiness is imposed upon the " owner " but in the case of a demise charter, it is the charterer who is the owner. That was the view taken in *Barbaro* v. *Auditore Contracting Co.* (215 App. Div. 595, 601) where the court said, discussing liability to an injured longshoreman, for an unsafe winch, that the " duty [to keep the appliance safe] cannot, in my opinion, be upon both

the owner and the charterer." The court, in *Barbaro* v. *Auditore Contracting Co.* (*supra*), went on to say that if this charter was a demise, then the liability was the charterer's only, otherwise it was the actual owner's responsibility. The *Barbaro* case was cited with approval in *Kuhn* v. *City of New York* (274 N. Y. 118, 131) where a charterer was absolved from responsibility for a ship's condition, because that particular charterer lacked full possession and control. Presumably if that charterer had had such possession and control under its contract with the true owner, then it and not the true owner would have been answerable. The same idea is at least suggested in Judge POUND's opinion in *Barnevo* v. *Munson Steamship Line* (239 N. Y. 486, 490) and by our decision in *Lloyd* v. *Hedger Transportation Corp.* (270 N. Y. 617).

The English authorities, too, say that a chartering owner, divesting himself of control, divests himself also of liability (see *Baumwoll* v. *Furness,* 62 L. J. [Q. B.] 201, [1893] A. C. 8, and comment thereon at page 275 of the seventh edition of Maclachlan on Merchant Shipping).

Very much in point, we think, is *Matter of New York Dock Co.* (61 F. 2d 777) where a claimant's injury resulted from an unseaworthy condition which had existed before the pile driver had been chartered to one Converse by New York Dock Company. Said the Second Circuit Court of Appeals: "Whatever the legal obligations of the New York Dock Company, under the charter or otherwise, may be to Converse, this claimant must look for indemnity solely to his employer, Converse, who had the entire control of the pile driver." The Circuit Court noted that the defect there was not a hidden one, and that the charterer was under a contractual obligation to put the pile driver in shape for use, and so the court did not find it necessary to say whether or not, under other circumstances, it would adopt the rule of *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382) as to "liability at large for latent defects which make things dangerous instrumentalities which one supplies to be used without test or change * * * ". A more recent decision in another circuit is *Vitozi* v. *Balboa Shipping Co.* (69 F. Supp. 286 [District of Massachusetts]). The holding of that case was that the general or actual owner of a vessel was not liable to a longshoreman for injuries caused by the unseaworthy

condition of the ship, since the obligation of seaworthiness was on the charterer, who, under charter party provisions, was the apparent or special owner. Discussing *Seas Shipping Co.* v. *Sieracki* (*supra*) the District Judge in the *Vitozi* case said that nothing in the *Sieracki* opinion " intimates that the obligation of seaworthiness of a ship is imposed on anyone except the owner in control of the ship."

In all of the above we have been treating the present case as one brought under the " Osceola " doctrine for unseaworthiness, not in tort for negligence. The maritime law, of course, gives recovery for negligence in appropriate cases. But, looking at the facts in the light most favorable to plaintiff, we find here no breach of duty by defendant and so there was no negligence (see *Flat-Top Fuel Co.* v. *Martin*, 85 F. 2d 39, 41, certiorari denied 299 U. S. 585 and *Cullen Fuel Co.* v. *Hedger Co.*, 62 F. 2d 68, affd. 290 U. S. 82; see, also, the discussion in the *New York Dock Co.* case, *supra*, as to negligence as distinguished from unseaworthiness).

The orders should be reversed and the motion for summary judgment dismissing the complaint granted, with costs in all courts. The first certified question should be answered in the negative, the second certified question in the affirmative.

CONWAY, J. (dissenting). The question presented involves an oral demise charter, confirmed by letter, of a nonpower boat in New York Harbor while in an unseaworthy condition and as a result thereof, the injury of a seaman employed by the charterer. The demise was on a daily bare-boat basis with all repairs to be made by the charterer. The seaman sued the owner alone and it is urged in defense that under a doctrine akin to our decision in *Cullings* v. *Goetz* (256 N. Y. 287) liability for the injury suffered may be imposed only upon the charterer since he had become the owner *pro hac vice* for the term of the charter. There is no question here of any negligence by the charterer in the handling of the boat or its equipment. The unseaworthiness had existed for a period of approximately one year prior to the charter and continued until plaintiff's resultant injury.

In *The Osceola* (189 U. S. 158, 175) the rule as to unseaworthiness was clearly stated: " That the vessel and her

owner are, both by English and American law, liable to an indemnity for injuries received by *seamen* in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. *Scarff* v. *Metcalf*, 107 N. Y. 211.'' (Emphasis supplied.) For a long period courts proceeded upon the basis that liability for unseaworthiness flowed from contract but it has now been authoritatively settled in the recent case of *Seas Shipping Co.* v. *Sieracki* (328 U. S. 85) that it is absolute and non-delegable. Even prior to that time the Supreme Court of the United States in *Cullen Fuel Co.* v. *Hedger Co.* (290 U. S. 82, see, also, opinion of SWAN, C. J., below in 62 F. 2d 68) had held that the owner might not limit liability on his personal warranty of seaworthiness of a deck scow as against the charterer. In other words that his liability to the charterer was in personam and unlimited. The facts in that case are very similar in some respects to those in the instant one. The petitioner there was the owner of a scow which it chartered at a fixed daily rate of hire arranged orally by telephone. The scow was chartered by the respondent to lighter ore from shipside in New York harbor to the plant of the consignee of the ore. '' The day following the demise, while being loaded from the ship, the scow capsized, dumped her cargo, and damaged an adjacent wharf and vessel. Suits ensued, one of them by the respondent as bailee of the cargo, against the petitioner as owner of the scow. Limitation of liability was sought by the petitioner, but the district court refused a decree for limitation, finding that the scow was unseaworthy at the time of the demise.'' (290 U. S. at p. 87.) Three points were there decided: 1. That the owner's contract of warranty was personal; 2. that the respondent was entitled to recover as bailee of the cargo although the owner had made no contract and had no contract relations whatsoever with the cargo owner and although there was no allegation by the respondent of liability over to the cargo owner, and 3. that the warranty of seaworthiness was implied from the circumstances of the parties and the subject matter of the contract and could only be negatived by express covenant — that it was as much a part of the contract as any express stipulation (p. 88). The briefs in that case show that it was urged unsuccessfully by the petitioner that it had made no contract for the carriage of

the cargo and that the charter was a demise whereby the charterer became the owner *pro hac vice* of the boat. It was likewise argued unsuccessfully (1) that the warranty was only as to the seaworthiness of the boat at the time of its delivery and was not continuous, and (2) that there was no implied warranty by the owner of the boat to the owner of the cargo but that there was an implied warranty of seaworthiness to the cargo owner by the charterer.

It must be noted that the *Sieracki* case (*supra*) involved a stevedore and not a seaman and therefore went further than is necessary here where a seaman is involved. Neither reason nor cited authority requires us to hold that the liability of an owner for unseaworthiness exists in favor of the charterer and even of a bailee of a cargo and yet does not extend to a seaman in the employ of the charterer. As was said in the *Sieracki* case, the warranty of seaworthiness imposes an absolute duty, and thus absolute liability, to all who come within the range of its humanitarian policy. It seems to me that the seaman is more within the range of that policy than the charterer and cargo bailee in the *Cullen Fuel Co.* case (*supra*). The following from the *Sieracki* case (pp. 93–94) well expresses the reason for and the scope of this policy: " Because rationalizing the liability as one attached by law to the relation of shipowner and seaman, where this results from contract, may have been thought useful to negative the importation of those common-law tort limitations does not mean, however, that the liability is itself contractual or that it may not extend to situations where the ship's work is done by others not in such an immediate relation of employment to the owner. That the liability may not be either so founded or so limited would seem indicated by the stress the cases uniformly place upon its relation, both in character and in scope, to the hazards of marine service which unseaworthiness places on the men who perform it. These, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone the resulting personal disability and loss, have been thought to justify and to require putting their burden, in so far as it is measurable in money, upon the owner regardless of his fault. Those risks are avoidable by the owner to the extent that they may result from

negligence. And beyond this he is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost.

" These and other considerations arising from the hazards which maritime service places upon men who perform it, rather than any consensual basis of responsibility, have been the paramount influences dictating the shipowner's liability for unseaworthiness as well as its absolute character. It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character. *Mahnich* v. *Southern S. S. Co., supra* [321 U. S. 96]; *Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52 [34 S. Ct. 733, 58 L. ed. 1208, 51 L. R. A. (N. S.) 1157]; *Carlisle Packing Co.* v. *Sandanger, supra* [259 U. S. 255]. It is a form of absolute duty owing to all within the range of its humanitarian policy."

It seems clear from that and other language in the opinion in the *Sieracki* case that this humanitarian policy of the law is not to be confined to seamen or stevedores who perform the ship's service under immediatae hire to the owner but extends to those who render it with his consent or by his arrangement or to intermediary employers such as charterers or master stevedores. This is made more clear when we consider that the owner of a vessel who charters her " is bound to see that she is seaworthy and suitable for the service in which she is to be employed. If there be defects known, or not known, he is not excused." That is his obligation to the charterer. (*Work* v. *Leathers*, 97 U. S. 379, 380.) The liability under the warranty is thus clearly not dependent on the owner's occupation and control but upon the existence of unseaworthiness at the time of the charter. This differs from our State court rules applicable to a lease or demise of real property. This is not to say, of course, that there was not liability here also to the seaman on the part of the charterer. The liability was several. (*Seas Shipping Co.* v. *Sieracki, supra,* at p. 89.)

The cases decided prior to the *Sieracki* and the *Cullen Fuel Co.* cases (*supra*) are not very helpful. However, no case has been cited to us in this State which holds the law to be as the

defendant here contends. On the contrary, the matter came before us in *De Pinto* v. *O'Donnell Transportation Co.* (293 N. Y. 32). In that case the owner had chartered a nonpower boat to one Dwyer. De Pinto, a stevedore, while working on the boat, stepped on a hatch cover which became displaced causing him to fall into the hold. His widow brought action against the owner and charterer Dwyer and the matter of the warranty of seaworthiness was litigated as between the defendants and submitted to the jury. The jury rendered a verdict against the owner and in favor of the charterer. In our opinion we said (p. 36): " The evidence amply supports the finding by the jury that there was negligence on the part of the defendant-appellant and freedom from contributory negligence on the part of the deceased."

In *Caldarola* v. *Moore-McCormack Lines* (295 N. Y. 463), the plaintiff, a longshoreman, sued a defendant which had neither ownership, possession nor control of the vessel. The case is not applicable here and the question of unseaworthiness was not presented to us.

The judgment should be affirmed and the first question certified answered in the affirmative and the second in the negative.

LOUGHRAN, Ch. J., LEWIS, THACHER, DYE and FULD, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion.

Orders reversed, etc.