OPINION OF THE COURT
 

 Per Curiam.
 

 The central issue in these cases involving claims under the Longshoremen’s and Harbor Workers’ Compensation Act (the Act) (33 USC §§ 901-950) is whether the Joint Maritime Safety Code (the Code), prepared jointly by shippers and the long
 
 *6
 
 shoremen’s union, has expanded the duties imposed upon shipowners under the Act. We hold that it does not.
 

 I
 

 Francesco Cruz, a longshoreman employed by John W. McGrath Corporation, a stevedore company, was injured on September 17, 1976 when a hi-lo being used by longshoremen to move bales of burlap struck a piece of dunnage, dislodging a 2,400 pound burlap bag that struck him on the back of his foot. He commenced this action against American Export Lines, Inc. and Farrell Lines, Inc., the owners of
 
 Export Builder,
 
 the vessel being discharged of its cargo by McGrath longshoremen at the time of the accident. Cruz alleged that the "stevedoring work on board [the
 
 Export Builder]
 
 was being performed under the general supervision and direction of defendant^]”, that hatch No. 3, where the work was being done, was "maintained, supplied and provided” by defendants and that defendants, through their negligence,
 
 inter alla,
 
 in failing to provide a safe place to work "violated the provisions of the Joint Maritime Safety Code of the Port of New York”.
 

 Following joinder of issue and completion of plaintiff’s examination before trial, the shipowners moved for summary judgment contending that no legally sufficient cause of action against them had been set forth. The motion was based on Cruz’s deposition testimony that at the time of the accident the cargo operations had been turned over to the stevedore company, which defendants argued was an independent contractor employing acknowledged experts in cargo handling who chose the manner and method of discharging the cargo. The shipowners asserted, therefore, that under the 1972 amendments to the Act, they were not liable for injuries sustained by a longshoreman during the stevedoring operation. In opposition to the motion, plaintiff submitted an affidavit of his fellow longshoreman Tomas Aviles, who asserted that he had complained to the ship’s mate that "there was a lot of dunnage on the deck and between the bales” and had been told by the mate to "leave it” because "the crew would remove it when [the longshoremen] stopped work.”
 

 Special Term denied the motion, finding that there were triable issues of fact as to the nature and cause of the accident. A divided Appellate Division reversed and granted the motion for summary judgment, holding that pursuant to
 
 Scindia Steam Nav. Co. v De Los Santos
 
 (451 US 156), "a
 
 *7
 
 shipowner 'has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore’ ” (106 AD2d, at p 9). The court reasoned that under the 1972 amendments to the Act, the stevedore, rather than the shipowner, is required to provide the longshoremen with a reasonably safe place to work and to comply with those requirements determined by the Secretary of Labor to be the precautions necessary to insure the safety of the longshoremen with respect to equipment and working conditions. The court rejected as " 'contrary to the prevailing weight of * * * authority’ ” (106 AD2d, at p 11) plaintiff’s contention that the Code places upon the shipowner a concurrent duty to maintain a safe workplace for stevedoring operations.
 

 Plaintiff argues on this appeal that not only did defendants have a duty, imposed by the Code, to maintain the work place in a safe condition, but that they also assumed an affirmative duty to remove the dunnage and to prevent injury to plaintiff upon being advised that there was "a lot of dunnage on the deck” of the hatch. Moreover, plaintiff contends that the longshoremen were proceeding "improvidently” in the face of the danger created by the dunnage, and thus defendants were obligated to intervene since under the circumstances they could not reasonably anticipate that the stevedore would correct the dangerous condition.
 

 II
 

 Ottavio Bussanich, a longshoreman employed by Universal Maritime Service Corp., was struck on the head by a piece of lumber that fell from somewhere above while he was discharging household goods from the lower hold of the
 
 SS Pioneer Contender,
 
 a vessel owned by defendant. The five-week trial focused on the origin of that timber.
 

 A fellow employee testified for Bussanich that the timber fell from an ammunition bulkhead or sheathing, that without dispute, had nothing to do with the cargo operation. In vessels carrying ammunition, sheathing is installed as a buffer between the ammunition and the vessel’s metal hull to prevent sparks that could cause the ammunition and the vessel to explode. Here, independent contractors had installed sheathing some three months earlier in connection with a voyage by the vessel to Vietnam. Bussanich’s theory was that the timber
 
 *8
 
 had been held in place by just one nail, that the vessel was on notice of this condition, and that this constituted a safety hazard for which the vessel should be held liable. The position of defendant shipowner was that the planking fell from a cargo bulkhead fence erected during unloading operations by the stevedore, whose duty it also was to dismantle the fence when operations were completed. Under this theory, the fence, and the hazard, were created by the stevedore.
 

 During trial, plaintiff, without objection, had a section of the Code read to the jury. Plaintiff’s expert testified that the Code was a codification of industry custom and practice, and that defendant had breached the section by failing to provide plaintiff a safe place to work. Defendant, in turn, asked the court to take notice of and charge a number of other Code sections relating to the duty to make accident reports and the duties of stevedores to ensure the safety of longshoremen. However, the trial judge ultimately decided to strike from evidence the previously admitted portion of the Code and declined to charge any part of the Code. Instead, in its main charge the court instructed the jury as follows: "A ship owner’s liability for negligence is based upon the failure of the ship owner’s officers or crew or ship’s representatives to perform the duty of which a reasonably prudent officer, crew member or ship’s representative should have done under the circumstances, that is, to provide a reasonably safe place for the Plaintiff to work, and to cause the remedy or removal of any dangerous or unsafe condition which it knows of, and in the exercise of reasonable care could discern or discover.” Thereafter, in response to a question from the jury during deliberations, the court instructed them that: "You are not permitted to speculate or to guess as to what caused the accident. If you cannot determine from the testimony the cause of the accident, then you must find in favor of the Defendant. A vessel need be only reasonably fit for its intended purpose or service, and once an independent stevedoring contractor such as Plaintiff’s employer has started the cargo handling operation, it becomes the stevedore’s duty, not the vessel owner’s, to take such steps as are necessary to maintain a safe place in which the stevedore’s employees can work.”
 

 The jury returned a general verdict in favor of defendant, and the Appellate Division affirmed.
 

 
 *9
 
 III
 

 At the outset, we note that our role here, is limited. In admiralty cases "we proceed cautiously cognizant that it is the general maritime law that governs the rights and liabilities of the parties”
 
 (Alvez v American Export Lines,
 
 46 NY2d 634, 638,
 
 affd
 
 446 US 274). Answers to the questions presented are "obtainable solely by recourse to Federal law”
 
 (id.,
 
 at p 639). In this limited role we are obliged to apply "a controlling Supreme Court decision” if it exists or "a uniform Federal rule, albeit one established by lower Federal courts”
 
 (id.).
 
 In the absence of either we must proceed with deference to analyze the question under the general maritime law.
 

 Prior to 1972, a longshoreman injured while loading or unloading a vessel received compensation payments from his employer and could also sue the shipowner on the theory that his injury was caused by the vessel’s unseaworthiness or negligence
 
 (Seas Shipping Co. v Sieracki,
 
 328 US 85). Proof of unseaworthiness required no proof of the shipowner’s fault other than an unsafe, injury-causing condition on the vessel. This was true even though the condition was caused by the stevedore or its employee
 
 (Scindia Steam Nav. Co. v De Los Santos,
 
 451 US 156, 164-165, n 11,
 
 supra).
 
 However, if the stevedore’s conduct was a factor, the shipowner could recover against it for breach of express or implied warranty to handle the cargo in a reasonably safe manner
 
 (Ryan Stevedoring Co. v Pan-Atlantic Corp.,
 
 350 US 124).
 

 This scheme was radically changed by Congress in 1972
 
 (see,
 
 Pub L 92-576, 86 Stat 1251,
 
 amdg
 
 33 USC § 902
 
 et seq.; Scindia Steam Nav. Co. v De Los Santos,
 
 451 US 156, 165,
 
 supra).
 
 Balancing the conflicting interests of the vessel owner, the stevedore, and the longshoreman, Congress made three substantial changes: "First, the level of benefits [payable to longshoremen by stevedores] was substantially increased, thereby increasing the likelihood that the statutory compensation recoverable without proof of fault would be adequate. Second, the shipowner’s right to seek indemnity from the stevedore under
 
 Ryan Stevedoring
 
 was eliminated, thereby removing a category of litigation from the courts, placing more definite limits on the stevedore’s insurance costs, and removing a potential source of conflict between the interests of employers and employees. Third, the shipowner’s nearly absolute liability for unseaworthiness was eliminated, thereby further narrowing the area of potential litigation and increas
 
 *10
 
 ing the relative importance of statutory awards as the favored method of compensation.”
 
 (Rodriguez v Compass Shipping Co.,
 
 451 US 596, 616 [nn omitted];
 
 see, Scindia Steam Nav. Co. v De Los Santos,
 
 451 US 156, 165,
 
 supra.)
 

 Thus, section 905 (b) of the Act was amended to provide in part: "In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party * * * and the employer shall not be liable to the vessel for such damages directly or indirectly * * * The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred”. (33 USC § 905 [b].)
 

 Scindia Steam,
 
 the Supreme Court’s most definitive statement to date in this area, has made clear that, at a minimum, a shipowner must be found negligent before it may be held liable. "Congress intended to make the vessel answerable for its own negligence and to terminate its automatic, faultless responsibility for conditions caused by the negligence or other faults of the stevedore” (451 US, at p 168). The court also noted, however, that in some circumstances the vessel will not be liable in negligence even if it fails to prevent foreseeable injuries to longshoremen: "Cases holding the vessel liable on the ground that it owed nondelegable duties to protect the longshoremen from injury were rejected [by Congress]. It would be inconsistent with the Act to hold, nevertheless, that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process. Such an approach would repeatedly result in holding the shipowner solely liable for conditions that are attributable to the stevedore, rather than the ship. True, the liability would be cast in terms of negligence rather than unseaworthiness, but the result would be much the same. '[C]reation of a shipowner’s duty to oversee the stevedore’s activity and insure the safety of longshoremen would * * * saddle the shipowner with precisely the sort of nondelegable duty that Congress sought to eliminate by amending section 905 (b).’ ”
 
 (Scindia Steam Nav. Co. v De Los Santos,
 
 451 US, at pp 168-169,
 
 supra
 
 [nn omitted];
 
 see also, id.,
 
 at p 181 [Powell, J., concurring].)
 

 The
 
 Scindia
 
 court further held that "absent contract provision, positive law, or custom to the contrary * * * the shipowner has no general duty by way of supervision or inspection
 
 *11
 
 to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore” (451 US, at p 172,
 
 supra).
 
 This does not mean, however, that the vessel owes no duty to a longshoreman
 
 (Lieggi v Maritime Co.,
 
 667 F2d 324, 328). The shipowner has a duty to exercise reasonable care to turn over the vessel and its equipment to the stevedore in reasonably safe condition and to warn the stevedore of hazards of which the owner is or should be aware
 
 (Scindia Steam Nav. Co. v De Los Santos,
 
 451 US, at p 166,
 
 supra; Evans v Transportacion Mar. Mexicana,
 
 639 F2d 848, 855). Additionally, "the vessel may be liable if it actively involves itself in the cargo operations”
 
 (Scindia Steam Nav. Co. v De Los Santos,
 
 451 US, at p 167,
 
 supra).
 
 Moreover, although the vessel has no general duty to supervise the stevedore, a vessel with knowledge of a dangerous condition has a duty to intervene when the stevedore’s decision to continue operations despite the danger is "obviously improvident”
 
 (id.,
 
 at p 175).
 
 [1]
 
 In the cases now before us, the plaintiffs claim that the Code constitutes the "contract provision, positive law, or custom” exceptions referred to in
 
 Scindia
 
 necessary to enlarge the vessel’s duties.
 

 The Code in its introduction best describes its scope and intended effect:
 

 "This Manual presents the commonly agreed on practices for working together safely. These practices have been developed as a result of the experiences and suggestions of longshoremen, supervisors, the NYSA-ILA Port of New York Joint Safety Committee, and other maritime safety specialists throughout the country.
 

 * * *
 

 "This Manual applies to all stevedoring operations. It is
 
 *12
 
 intended to indicate the minimum recommendations for the prevention of accidents and should neither conflict with statutory provisions of the United States or other local governmental agencies nor prevent the use of improved gear or methods which provide equal or better protection and efficiency. It is not intended that the duties or responsibilities shall be limited to those outlined in this Manual.”
 

 In support of their claim that the Code enlarges the vessel’s duties, plaintiffs point to section 1 of part C, which provides that "[t]he owner, master and officers of the vessel shall supply and maintain in safe condition for use all ship’s gear and equipment, tools and work spaces which are to be used in stevedoring operations.” Plaintiffs argue that the obligation to
 
 "maintain
 
 in safe condition for use all * * * work spaces” creates an ongoing duty to protect longshoremen against hazards created by the stevedore during the course of operations after the master has turned the vessel over. Although
 
 Scindia
 
 makes clear that regulation, contract or custom may place additional duties on the vessel, the Second Circuit has never recognized the Code as establishing any such duty in New York harbor. To do so would be inconsistent with section 905 (b) of the Act and would " 'saddle the shipowner with precisely the sort of nondelegable duty that Congress sought to eliminate’ ”
 
 (Scindia Steam Nav. Co. v De Los Santos,
 
 451 US, at p 169,
 
 supra).
 

 Plaintiffs rely upon
 
 Irizarry v Compania Maritima Navegacion Netumar
 
 (1981 AMC 2424 [2d Cir 1980],
 
 cert denied
 
 451 US 969), where the Second Circuit, in a memorandum without any precedential effect
 
 (see,
 
 Rules of Second Circuit § 0.23), cited section 1 of part C of the Code in affirming a judgment in favor of a longshoreman who fell while walking across the icy surface of a container. They also rely upon the Supreme Court’s statement at the end of a footnote in
 
 Scindia,
 
 that it noted "with some interest” the
 
 Irizarry
 
 decision and its apparent reliance on the Code
 
 (see,
 
 451 US, at p 177, n 25,
 
 supra). Irizarry,
 
 however, is inapposite because there the hazardous condition — snow and ice — came into existence before the vessel entered port, long before the stevedore took control. Moreover, the Second Circuit viewed its
 
 Irizarry
 
 decision as consistent with
 
 Giglio v Farrell Lines
 
 (613 F2d 429), where the court affirmed a dismissal of a claim based on a hazardous condition —spilled brine and graphite creating a slippery surface — created by the stevedore during unloading operations. The majority in
 
 Giglio
 
 tacitly rejected Judge Oakes’ argument in dissent
 
 *13
 
 that the Code created a duty on the vessel’s part to keep the area safe. Indeed, although Judge Oakes cited section 1 of part C, even he relied principally on other sections of the Code dealing specifically with a vessel’s obligations to make available and apply sand to cover spills of slippery substances. In
 
 Albergo v Hellenic Lines
 
 (658 F2d 66), where the plaintiff was injured when he tripped on rope cuttings that the stevedore had a duty to clear away, a majority of the Second Circuit in affirming a grant of judgment to the vessel notwithstanding the verdict, again tacitly rejected Judge Oakes’ position that the general language of section 1 of part C of the Code imposed on the vessel a duty to keep a work area clear while it is under a stevedore’s control.
 

 As District Judge Haight observed in
 
 Lubrano v Companhia de Navegacao Lloyd Brasileiro
 
 (575 F Supp 1541, 1548-1549): "[Judge Oakes’ position] is a dissenting view, and I conceive it to be contrary to the prevailing weight of Second Circuit authority. Moreover, the majority view is * * * clearly correct. A vessel owner’s joint fault under the Safety Code would render the owner liable for the full amount of the injured longshoreman’s injuries, even if the vessel owner had not created the condition, the independent stevedore had negligently failed to correct it, and the vessel owner could not have reasonably anticipated that failure. That result would be inconsistent with the thrust of recent authority holding that the vessel owner may rely upon the expertise of the stevedoring contractor * * * [I]n practical result, the vessel owner would assume sole responsibility to an injured longshoreman in circumstances where the federal regulatory scheme places primary responsibility upon the stevedoring contractor.”
 

 Thus it is clear that, under the Federal rule we are bound to apply, the Code does not impose additional duties on the shipowner.
 

 IV
 

 Applying the above-stated principles to the cases now before us, we hold in
 
 Cruz
 
 that the Appellate Division erred in granting summary judgment and dismissing the complaint. Mindful that issue finding and not issue resolution is a court’s proper function on a motion for summary judgment, and drawing all inferences in plaintiff’s favor as we are bound to do, we conclude that factual issues exist requiring a plenary trial. There is a question whether the vessel assumed responsi
 
 *14
 
 bility for removal of the dunnage
 
 (see, Lieggi v Maritime Co.,
 
 667 F2d 324,
 
 supra),
 
 or whether the vessel improperly directed the stevedore to keep working despite a known hazard that the vessel knew would not be corrected
 
 (see, Lubrano v Royal Netherlands S. S. Co.,
 
 572 F2d 364).
 

 In
 
 Bussanich,
 
 the court’s charge adequately stated the controlling legal principles to be applied by the jury in resolving the sharply contested issues of fact. While the court’s supplemental charge may not have fully explicated the possibility of the shipowner’s concurrent liability for its negligence, it is clear that had the jury accepted plaintiff’s theory, the charge properly would have allowed the jury to find for plaintiff.
 
 [2]
 

 V
 

 In
 
 Cruz,
 
 the order of the Appellate Division should be reversed, with costs, and defendants’ motion for summary judgment denied. In
 
 Bussanich,
 
 the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur in Per Curiam opinion; Judge Hancock, Jr., taking no part.
 

 In
 
 Cruz v American Export Lines:
 
 Order reversed, with costs, and defendants’ motion for summary judgment denied.
 

 In
 
 Bussanich v United States Lines:
 
 Order affirmed, with costs. Appellant’s oral application to strike matter from respondent’s brief denied.
 

 [1]
 

 . We note the Second Circuit has rejected the Appellate Division’s reasoning in
 
 Cruz
 
 that the regulatory and statutory scheme of the Occupational Safety and Health Administration places primary responsibility for the safety of the longshoremen upon the stevedore so as to relieve the shipowner of any obligation
 
 (Lieggi v Maritime Co.,
 
 667 F2d 324). "The regulations do not provide that the stevedore’s responsibility for the condition of the work spaces is exclusive. The fact that the stevedore has a duty to keep those areas clear does not prevent the shipowner from having one as well; if both the shipowner and the stevedore neglect their duties they may be concurrently negligent” (667 F2d, at p 328, n 8;
 
 see also, Lubrano v Royal Netherlands S. S. Co.,
 
 572 F2d 364;
 
 Lopez v A/S D/S Svendborg,
 
 581 F2d 319).
 

 [2]
 

 . We have considered plaintiffs other contentions and find them to be without merit.