■ DAGOBERTO GARCIA, Appellant, v UNION CARBIDE CORPORATION et al., Respondents.—Order, Supreme Court, New York County (Michael J. Dontzin, J.), entered December 11, 1989, granting defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Plaintiff was employed as an engine man aboard a vessel owned by defendant Union Carbide (a New York corporation) and operated by defendant Marine Transport Lines. While the vessel was docked at Guayanilla Bay in Ponce, Puerto Rico in April 1976, an explosion and fire occurred at an adjacent chemicals plant and tank farm owned and operated by Union Carbide Caribe, Inc. (a Delaware corporation, hereafter "Caribe"), a wholly owned subsidiary of Union Carbide. The alert crew of the vessel cut its mooring lines and allowed it to drift away from the pier, thus limiting the vessel's physical damage. But plaintiff, down in the engine room, allegedly suffered psychological injury in the form of anxiety from the traumatic experience, leading to periods of his unfitness for sea duty, for which maintenance and cure were paid, at rates set in the collective bargaining agreement. Evidently dissatisfied with the amount of compensation received, plaintiff brought this action in 1977 under the Jones Act (46 USC Appendix, § 688) for nonphysical injury, as well as under the general maritime doctrine of unseaworthiness of a vessel and the obligation to provide an injured seaman with appropriate maintenance and cure. Plaintiff failed to join Caribe as a party defendant, even though Caribe was identified and its role described in the Coast Guard's incident report after the explosion and fire.

In opposition to defendants' summary judgment motion, plaintiff argued for permission to amend the caption to add Caribe as a party defendant, twelve years after commencement of the action, or in the alternative, to be permitted to join Caribe as the "alter ego" of its parent, Union Carbide. But leave to pierce the corporate veil will lie only where a parent corporation has been shown to have exercised complete dominion and control over the subsidiary *(American Protein Corp. v AB Volvo,* 844 F2d 56, 60). Even complete ownership, which is the situation here, will not alone render a parent

corporation liable for the torts of its subsidiary *(Bujosa v Metropolitan Transp. Auth.,* 44 AD2d 849). Standing unrefuted in the record is the sworn disavowal by a Union Carbide officer that the corporation had anything to do with the ownership or operation of Caribe's chemicals plant and shoreside storage tanks at Guayanilla Bay. Even after examination of a Union Carbide employee on the relationship of Union Carbide to Caribe, plaintiff is unable to point to any evidence of shared control such as would permit piercing of the corporate veil. Unless some evidentiary showing can be made of defendant's actual control over the area in question, or at least of knowledge by defendant that a hazardous condition existed on the adjacent pier which warranted some warning to plaintiff, no cause of action—under either the Jones Act or general principles of maritime law—can withstand a motion for summary judgment *(Ugarte v United States Lines,* 64 NY2d 836, *cert denied* 474 US 848).

Plaintiff has abandoned, on this appeal, any claim that unseaworthiness, or any unsafe condition aboard defendant's vessel, was the proximate cause of his injury. Instead he urges that a triable Jones Act negligence issue is presented by the one-page affidavit of his expert, Edward Feldman, a licensed master mariner, who having been "advised" of the facts of the 1976 explosion, opines as follows: "It is the custom and practice in the maritime industry for the operator of a vessel to assure that the vessel is docked in a safe berth. In my opinion, permitting a manned tanker such as the MARINE CHEMICAL TRANSPORTER to be docked within 100 feet off a tank containing explosive chemicals is not in accordance with good, safe, and customary practices."

In our view this opinion, which amounts to little more than the truism that it is good practice to berth a vessel at a safe (as opposed to unsafe) pier, fails to present a triable issue. Apart from the fact that this theory of negligence was first presented twelve years after the plaintiff's first bill of particulars was served, it ignores the requirement that even if an unsafe condition existed, plaintiff is obliged to prove defendant's master or officers of the vessel had some notice of the hazard, which he has not done. *(Biggs v Logicon, Inc.,* 663 F2d 52, 54; *Rice v Atlantic Gulf & Pac. Co.,* 484 F2d 1318, 1320.)

Furthermore, what proof there is on the condition of the pier is offered by defendant, and establishes that eight days before the explosion the pier was inspected by the Coast Guard, and a certificate issued that the facility was in compliance with all applicable safety regulations.

We have considered plaintiff's other arguments and find them without merit. Concur—Ellerin, J. P., Wallach, Kupferman, Asch and Kassal, JJ.