**AMERICAN DREDGING COMPANY,**
Plaintiff,

v.

**PLAZA PETROLEUM INCORPORATED, Kerr–McGee Refining Corporation, Royal Petroleum, a Division of Kerr–McGee Refining Corporation, and Eklof Marine Corporation, Defendants.**

**No. 90 CV 353 (SJ).**

United States District Court,
E.D. New York.

March 16, 1992.

Michael D. Martucci by Michael D. Martucci, New York City, for plaintiff.

Selverne & Flam by Eric Vaughn Flam, New York City, for defendant Plaza Petroleum Inc.

Paul, Hastings, Janofsky & Walker by Kevin C. Logue, New York City, for defendants Kerr–McGee Refining Corp. and Royal Petroleum.

Freehill Hogan & Mahar by James Ross, New York City, for Eklof Marine Corp.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

Plaintiff American Dredging Company ("ADC") purchased 38,000 gallons of "No. 2 fuel oil" from Plaza Petroleum Inc. ("Plaza"). Plaza, in turn, contacted Royal Petroleum, a division of Kerr McGee Refining Corporation, Inc. (collectively "KMRC") and purchased 38,000 gallons of fuel from KMRC. Eklof Marine Corp. ("Eklof") was engaged to transport the fuel. Plaintiff alleges that the oil it received was contaminated and seeks monetary compensation for the damages that such contamination caused. Defendants Plaza and KMRC move for summary judgment. Each of the motions has been fully briefed and oral argument was heard on January 17, 1992.

### I. *Plaza's Motion*

"Under Fed.R.Civ.P. 56(c), summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 'Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.'" *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780 (2d Cir.1992). Furthermore, when the issue is construction of a contract, summary judgment is proper only when the contract is "'wholly unambiguous.'" *Mycak v. Honeywell, Inc.*, 953 F.2d 798 (2d Cir.1992) *quoting Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.1985)). The mere assertion of ambiguity is insufficient to preclude summary judgment.

Plaintiff raises four claims against Plaza: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (c) negligently shipping the fuel on the Eklof barge; and (4) unseaworthiness of the Eklof barge.

### a. *Express Warranty and Implied Warranty Claims*

#### 1. *Incorporation by Reference.*

The plaintiff concedes that there was an express contract between itself and Plaza, but challenges what terms it assented to in that agreement. The contract from which this dispute arises consists of a telex (the "Telex") that was sent by Plaza to ADC and which contains a notation on it ("ADCO CMDN") showing its receipt by

ADC. Plaintiff does not allege that it objected to the Telex in any way and, indeed, it accepted the fuel. Plaintiff argues, however, that it did not intend to assent to the Terms and Conditions incorporated by reference into the Telex. Specifically, at the bottom of the Telex, there is a clause which states:

> THE PRODUCT IS SOLD ... SUBJECT TO THE "TERMS AND CONDITIONS OF SALE OF PETROLEUM PRODUCTS" ISSUED BY PLAZA PETROLEUM, INC. WHICH IS AVAILABLE FOR REVIEW UPON REQUEST.

Paragraph 12(c) of the "Terms and Conditions of Sale of Petroleum Products," (the "Terms and Conditions") provides that:

> EXCEPT AS EXPRESSLY PROVIDED IN THE CONTRACT, THE SELLER SHALL NOT BE LIABLE FOR CONSEQUENTIAL, INDIRECT OR SPECIAL LOSSES OR SPECIAL DAMAGES OF ANY KIND ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE PERFORMANCE OF OR FAILURE TO PERFORM THE CONTRACT.

Because it purports not to have seen or agreed to the Terms and Conditions, ADC argues that the paragraph limiting damages was not validly incorporated and is therefore without effect. On that basis, ADC believes that it is entitled to the damages sought. I disagree.

■ There is no dispute that the Telex is the contract between the parties. At issue only is whether the Terms and Conditions were validly incorporated into the main agreement. To be sure, the Telex was a valid contract: it contains the names of the parties, the price and quantity of goods to be sold and identifies that it is a contract for the sale of goods. In addition, the symbol "ADCO CMDN" is appropriately treated as a signature under U.C.C. 1–201(39). Pursuant to U.C.C. 2–201, therefore, the Telex was a valid contract. *See also, Apex Oil Co. v. Vanguard Oil & Service Co., Inc.*, 760 F.2d 417, 423 (2d Cir.1985) (*citing* U.C.C. § 2–201(2)). And, no objections to the Telex were made by ADC in any form.

■ A contract can be comprised of separate writings or documents if the contract makes it clear that it is to be read with other writings. *Dietrich v. Chemical Bank*, 115 Misc.2d 713, 454 N.Y.S.2d 490 (1981); *see also, Texaco Export, Inc. v. Overseas Tankship Corp.*, 477 F.Supp. 289 (S.D.N.Y.), *aff'd*, 614 F.2d 1291 (2d Cir. 1979). The doctrine of incorporation by reference requires that the document to be incorporated be referred to and described in the contract so that the referenced document may be identified beyond doubt. *Chiacchia v. National Westminster Bank*, 124 A.D.2d 626, 507 N.Y.S.2d 888 (2d Dep't. 1986). Summary judgment be precluded only when the reference which incorporates the extraneous document is ambiguous. *See Chiacchia*, 507 N.Y.S.2d at 890.

■ The incorporation by reference clause at issue herein is crystal clear. The Telex states in no uncertain terms that the "sale is subject to the Terms and Conditions of the Sale of Petroleum Products ... which is available upon request." This reference clearly identifies the document to be incorporated, offers to issue the document upon ADC's request and specifies that the sale is subject to its terms. It cannot be said that this is ambiguous, or that ADC did not have notice of the incorporated document. As such, ADC's argument that the ambiguities in the contract and issue of intent must be considered by a jury are groundless. To summarize, the Telex constitutes the agreement between ADC and Plaza and it is unambiguous in its terms, one of which limits Plaza's obligation to pay consequential damages.

### 2. *Conspicuousness.*

■ The plaintiff further argues, citing U.C.C. § 2–316(2), that even if the clause was properly incorporated into the telex, such terms should not be given effect because it was not conspicuous. This argument, too, is without merit. U.C.C. § 2–316(2) provides that an exclusion or modification of an implied warranty must be in writing and must be conspicuous. Application of U.C.C. § 2–316 in this context is inappropriate as the clause here at issue,

paragraph 12(c) of the Terms and Conditions, is simply a limitation of damages and not a disclaimer of warranty. In fact, Plaza expressly warrants the product to be merchantable in paragraph 12(b) of the "Terms and Conditions."

Any limitation of remedy is governed by U.C.C. 2–719(3), not U.C.C. § 2–316. The issues of disclaimer or warranty and of limitation of remedy are two distinct issues, governed by different requirements. *Matco Electric Co. v. American District Telegraph*, 156 A.D.2d 840, 549 N.Y.S.2d 843 (3rd Dep't.1989); *see also, Boone Valley Cooperative v. French Oil Mill Co.*, 383 F.Supp. 606 (N.D.Iowa 1974); White & Summers, Uniform Commercial Code 383–386 (1986). U.C.C. § 2–719 provides that parties to a contract may agree to exclude consequential damages upon breach so long as such limitation is not "unconscionable." But, U.C.C. § 2–719(3) does not require that the clause be "conspicuous."

■ The issue of unconscionability is a matter of law for the court to decide and it does not automatically defeat a motion for summary judgment. *See Architectural Aluminum Corp. v. MaCarr, Inc.*, 70 Misc.2d 495, 333 N.Y.S.2d 818 (1972); *County Asphalt v. Lewis Welding*, 444 F.2d 372 (2d Cir.1971). There are many factors which a court may consider when deciding the issue of unconscionability including whether terms were hidden in fine print. *See Nu Dimensions Figure Salons v. Becerra*, 73 Misc.2d 140, 340 N.Y.S.2d 268 (1973). When the contract is between two commercial entities, unconscionability must be viewed "in light of the general commercial background and the commercial needs of the particular trade or case," and there is a presumption of conscionability when the contract is between businessmen in a commercial setting. Courts have rarely found a clause to be unconscionable in a commercial contract. *See Rubin v. Telemet*, 698 F.Supp. 447 (S.D.N.Y.1988); *Cayuga Harvester, Inc. v. Allis Chalmers Corp.*, 95 A.D.2d 5, 465 N.Y.S.2d 606 (4th Dep't 1983).

■ Plaintiff argues that because the incorporation-by-reference clause was inconspicuous, the clause is necessarily unconscionable. As noted above, conspicuousness is a factor for the court to consider when determining if a clause is unconscionable. Nonetheless, it is not dispositive. Neither § 2–719 nor its comments require a limitation of remedy to be conspicuous. *Computerized Radiological Services v. Syntex*, 595 F.Supp. 1495 (E.D.N.Y.1984). In general, unconscionability requires a showing of the absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. *Rubin v. Telemet America, Inc.*, 698 F.Supp. 447, 450 (S.D.N.Y.1988).

The print of clause incorporating the Terms and Conditions was not inconspicuous and it alone does not support a finding of unconscionability. In fact, it is the same size print as the remainder of the Telex. Nor does it evidence a lack of equal bargaining power.

In the instance case, ADC and Plaza are both sophisticated commercial entities. It is not uncommon for merchants to limit consequential damages or to incorporate terms of other documents, and commercial entities are well-aware of the need to carefully scrutinize the documents that comprise a given transaction. The record discloses that ADC has engaged in oil purchase transactions in the past with Plaza. Moreover, as an owner of vessels that are, undoubtedly, in continuous need of fuel, ADC is engaged in commercial negotiations on an ongoing basis. Surely, ADC was sophisticated in the trade. There is no basis to conclude that Plaza held a superior bargaining position, as a manufacturer might when dealing with an ordinary consumer. *Nu Dimensions Figure Salons*, 73 Misc.2d 140, 340 N.Y.S.2d 268. The mere exercise of superior bargaining power is not a sufficient basis for a finding of unconscionability. *See Burnell v. Morning Star Homes*, 114 A.D.2d 657, 494 N.Y.S.2d 488 (3rd Dep't 1985).

Because the limitation of damages was properly incorporated into the contract, it must be treated as part and parcel of the agreement between ADC and Plaza. The

limitations on damages is not unconscionable and, as such, may not be disregarded. Accordingly, plaintiff fails to state a cause of action in contract upon which relief can be granted.

### 3. Negligence and Unseaworthiness Claims.

 Finally, ADC is entitled to summary judgment on all claims sounding in negligence because it seeks economic damages. Under New York law, when a loss in an economic one, only the damages which flow from breach of contract may be recovered and recovery in negligence is precluded. *Arell's Fine Jewelers v. Honeywell,* 170 A.D.2d 1013, 566 N.Y.S.2d 505 (4th Dep't.1991); *Ralston Purina Co. v. Arthur G. McKee & Co.,* 158 A.D.2d 969, 551 N.Y.S.2d 720 (4th Dep't.1990); *Hole. General Motors Corp.,* 83 A.D.2d 715, 442 N.Y.S.2d 638, 640 (3rd Dep't.1981).

In this instance, the fuel, is alleged to have failed to perform as intended and ADC seeks damages including lost profits, damages to its vessels' fuel reserves, its vessels' engines and to filters against defendant Plaza resulting from Plaza's alleged tortious conduct.[1] Thus, these resulting losses are purely economic and not recoverable. Likewise, the unseaworthiness claim which sounds in negligence is an attempt by plaintiff to recover what is precluded by the contract and not properly otherwise recoverable under New York law.[2]

In summary, even if the court assumes that the fuel was not merchantable, pursuant to the terms of its contract with ADC, Plaza is not obligated to pay ADC for any consequential damages, the only damages it ADC now seeks. The complaint fails to state a cause of action against ADC because the allegedly contaminated fuel has already been replaced and the contract between ADC and Plaza precludes any other recovery in negligence. Moreover, because ADC seeks economic damages only, New York law precludes recovery in negligence and for unseaworthiness (which is simply an alternative way of asserting negligence). It too must be dismissed.

## II. KMRC's Motion

Plaintiff asserts four claims as the basis for a recovery against KMRC: 1) negligent failure to provide plaintiff ADC with a merchantable product; 2) failure to transport fuel in a seaworthy vessel; 3) breach of express warranty; and 4) breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose.

### a. Tort Claims.

At the outset, the court disposes of ADC's negligence and unseaworthiness claims.[3] As discussed more fully above, the damages sought are purely economic and recovery on a negligence theory is therefore precluded under New York law.

### b. Express and Implied Warranty Claims.

ADC attempts to invoke the contract between KMRC and Plaza as the basis for its express warranty claims on the theory that Plaza should be treated as a beneficiary of

---

**1.** Only where physical damage results from an accident caused by an unduly dangerous product should tort liability be allowed. *See Burnell v. Morning Star Homes,* 114 A.D.2d 657, 494 N.Y.S.2d 488 (3rd Dep't 1985).

**2.** The unseaworthiness claim appears to be grounded on the theory that the failure to transport the fuel on a seaworthy vessel was a negligent course of conduct. It is questionable, however, whether an unseaworthiness claim is even applicable in this context. Traditionally, unseaworthiness has been the basis for a shipowner's liability to its longshoremen employees. In fact, only in actions relating to workers' compensation, personal injury or wrongful death has the theory of unseaworthiness been successfully maintained. *See e.g., Garcia v. Union Carbide,* 176 A.D.2d 219, 574 N.Y.S.2d 341 (1991); *Cruz v. American Export Lines, Inc.,* 67 N.Y.2d 1, 499 N.Y.S.2d 30, 489 N.E.2d 1042 (1986), *Gjertsen v. Mawson & Mawson, Inc.,* 135 A.D.2d 779, 522 N.Y.S.2d 891 (2d Dep't, 1987); *Muscelli v. Frederick Starr Co.,* 296 N.Y. 330, 73 N.E.2d 536 (1947).

**3.** In any case, plaintiff's claim against KMRC for failure to transport the fuel in a seaworthy vessel is entirely inappropriate. The record shows that KMRC did not own, control, nor hire the vessel which transported the contaminated fuel.

this warranty. Without even exploring this "beneficiary" theory, I must dismiss this express warranty claim because there is no express warranty contained in the KMRC–Plaza contract.

The KMRC–Plaza contract was in the form of a Telex, the substance of which merely confirms the purchase price and amount of oil sold. There is no express warranty on the face of Telex to Plaza, nor is there any reference made whatsoever to such a warranty.

U.C.C. § 2–313(1) states that in order for an effective express warranty to be made, the seller must: a) make a promise or affirmation which becomes the basis for the bargain with the buyer; or b) describe the quality of the goods to be sold so that description becomes the basis for the bargain; or c) present a sample of the goods to be sold so that the whole of the goods must conform to the sample. No such representations are present here. Plaintiff does not point to any clause in the contract or any other facts which support its assertion that KMRC made an express warranty to any of the parties involved. Therefore, summary judgment is properly granted as to this claim.

As for the implied warranty claims, it is well settled in New York that a claim against a seller for economic loss for breach of implied warranty of merchantability and/or implied warranty of fitness can be maintained only by those parties with whom the seller is in privity. *See Jaffee Assoc. v. Bilsco*, 58 N.Y.2d 993, 461 N.Y.S.2d 1007, 448 N.E.2d 792 (1983); *Lexow & Jenkins v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25, 504 N.Y.S.2d 192 (2d Dep't.1986); *Hole v. General Motors Corp.*, 83 A.D.2d 715, 442 N.Y.S.2d 638 (3rd Dep't.1981); *County of Suffolk v. LILCO*, 728 F.2d 52, 63 (2d Cir.1984); *County of Westchester v. General Motors*, 555 F.Supp. 290 (S.D.N.Y.1983). If there is no seller-buyer relationship or sales contract between the parties and the plaintiff

does not sustain personal injuries, a cause of action based on breach of implied warranty will not lie. *Hole*, 83 A.D.2d at 716, 442 N.Y.S.2d 638.

Clearly, ADC was not in direct privity with KMRC. ADC argues, however, that Plaza was ADC's agent, and therefore ADC was in privity (through Plaza) with KMRC. In order for an agency relationship to exist, it must be shown that the principal exercised control over the agent, that the agent acted on behalf of the principal, and that the principal consented to the agency. *See Smirlock Realty Corp. v. Title Guarantee Co.*, 70 A.D.2d 455, 421 N.Y.S.2d 232 (2d Dep't.1979); *Facilities Development Corp. v. Oosterbaan*, 132 Misc.2d 923, 505 N.Y.S.2d 976 (1986). Merely because one is a broker does not necessarily mean that there exists an agency relationship sufficient to impute privity as between the seller and the ultimate consumer. *See Lexow & Jenkins*, 504 N.Y.S.2d at 194. And, I can find no basis in the record from which a jury might infer that Plaza was an agent of ADC for present purposes.

ADC and Plaza had one contract in which ADC was the buyer and Plaza the seller. In a separate transaction, KMRC contracted with Plaza. There are two separate sales instruments, one showing ADC to be the buyer and Plaza the seller; the other showing KMRC to be the seller and Plaza the buyer. Furthermore, the delivery and price terms were different in each transaction. The Telex between ADC and Plaza indicates that the sale was made on thirty-day payment terms at a fee of .6120 per gallon and delivery was "F.O.B. Dredges' Dlvd Via Barge." KMRC's sale to Plaza, however, was made on a "prepay" basis, at a fee of .5225 per gallon was charged and delivery was "F.O.B. Royal Sewaren, New Jersey." Simply put, there is no basis upon which a jury could conclude that Plaza was anything but an independent broker.[4] Essentially, Plaza purchased the oil

---

4. To lend further support to its agency theory, plaintiff additionally refers to defendant Plaza's (unfiled) Complaint for Declaratory Judgment, paragraph 6, where Plaza states:

".. Plaza .. at the request of American and acting as a broker on behalf of American, purchased and then resold to American, ... fuel oil".

on its own terms for its own account. Because no basis for a finding of privity exists, the implied warrant claims must fail.

Plaintiff also mistakenly cites U.C.C. § 2–318 for the proposition that third party beneficiaries need not be in privity with manufacturers to recover losses. U.C.C. § 2–318 is applicable only to losses relating to personal injury which is not the case here. The 1975 amendment to U.C.C. § 2–318 states:

A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such a person may use, consume or be affected by the goods and who is **injured in person** by breach of the warranty.

Plaintiff's reliance on § 2–318 is thus misplaced.

To summarize, because plaintiff seeks economic damages only, its claims in negligence must fail. Also, no express warranties were ever made by KMRC to any party, and so, this claim, too, must be dismissed. Finally, absence of privity precludes recovery under an implied warranty theory as well.

## CONCLUSION

Based on the foregoing, Plaza's motion for summary judgment is granted in all respects. Likewise, KMRC's summary judgment is also granted in its entirety.

So ordered.

First, this complaint was never filed in New York State Supreme Court. In any event, "[t]he declarations of an alleged agent may not be shown for the purpose of proving the fact of agency." *Lexow & Jenkins,* 122 A.D.2d 25, 504 N.Y.S.2d 192, 194 (2d Dep't.1986).