■ IDX Capital, LLC, et al., Respondents, v Phoenix Partners Group LLC et al., Defendants, and Wesley Wang, Appellant. IDX Capital, LLC, et al., Respondents, v Phoenix Partners Group LLC et al., Appellants, et al., Defendants. [922 NYS2d 304]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered June 8, 2010, which, insofar as appealed from as limited by the briefs, denied defendant Wesley Wang's motion for summary judgment dismissing the "earn-out" portion of plaintiffs' alleged damages, and denied the motion of defendants Phoenix Partners Group LLC, Phoenix Partners Group LP, Nicholas Stephan, Marcos Brodsky, and Patrick Nihan for summary judgment dismissing the second verified amended complaint as against them, modified, on the law, to dismiss the claim for earn-out damages and to dismiss the complaint as against the Phoenix Partners companies, Stephan and Brodsky, and otherwise affirmed, without costs.

Plaintiffs failed to establish with reasonable certainty that IDX Capital, LLC, an eight-month-old, money-losing start-up, is entitled to damages based on the provision in its proposed agree-

ment with a prospective acquirer calling for earn-out payments by the acquirer based on IDX hitting certain revenue targets. Absent evidence discussing the projections or specific strategies that likely would have resulted in IDX meeting the targets, such as an expert affidavit or an affidavit from a financial officer, plaintiffs' claim for earn-out damages is speculative and accordingly cannot be maintained (*see Kenford Co. v County of Erie*, 67 NY2d 257, 261 [1986]; *American Preferred Prescription v Health Mgt.*, 252 AD2d 414, 419 [1998]).

Clearly, issue finding, not issue resolution, is a court's proper function on a motion for summary judgment, resolving, in the process, all inferences in favor of the plaintiff (*see Cruz v American Export Lines*, 67 NY2d 1, 13 [1986], *cert denied sub nom. Bussanich v United States Lines, Inc.*, 476 US 1170 [1986]). However, only the existence of a bona fide issue raised by evidentiary facts, not one based on conclusory or speculative allegations, will suffice to defeat a motion for summary judgment (*see Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). Where competent evidence is presented by a defendant in support of a motion for summary judgment, the burden shifts to plaintiff to produce proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (*Miller v City of New York*, 253 AD2d 394, 395-396 [1998]).

We find plaintiffs' claim that Stephan and Brodsky participated in Wang's admitted campaign to interfere with the prospective acquisition to be speculative and based on unwarranted inferential leaps. With respect to Stephan, the text-message chain that plaintiffs rely on, even when read in a light most favorable to their complaint, does not indicate that Stephan knew of, let alone participated in, defendant Wang's campaign to derail the deal between IDX and Knight Capital Group. At the time of the text messages in question, Wang had not commenced his activities and gave no indication to Stephan of what he had planned. If anything, the inference to be drawn from the exchange supports Stephan's claim that he was not involved in the planning or execution of Wang's plans to break up the deal between IDX and Knight.

We draw a similar conclusion with respect to Brodsky. There is nothing to indicate that Brodsky provided, at Wang's request, a link to a web site, http://www.pervscan.com, which shortly thereafter found its way into one of the e-mails Wang sent to Knight, with the intent to further Wang's campaign to interfere with the transaction. There is no evidence that Wang told Brodsky why he wanted the link or what, if anything, he

intended to do with it. Indeed, Brodsky sent this link to other Phoenix employees. Further, other electronic messages relied on by plaintiff indicate that while Brodsky was aware that Wang wanted to interfere with the deal in some manner, he found Wang's fixation on the deal absurd, even comical. In fact, the electronic messages read in their entirety support Brodsky's position that he told Wang not to involve Phoenix in any schemes with respect to IDX.

Nor do we agree with the dissent that the message sent from Brodsky's account to Knight CEO Thomas Joyce that "bad things happen when good people do nothing," raises a genuine issue of fact. Brodsky claims no knowledge of this e-mail, and given the fact that other defendants have been accused of "hacking" into IDX computer systems, this submission is equivocal at best. When read in the context of all the evidence submitted by defendants, it simply does not rise to the level of a genuine, triable issue of fact sufficient to defeat defendants' motion.

Although plaintiff Cawley alleges that Stephan and Brodsky had animosity toward him, and that both wanted to see the deal fail, this allegation is clearly insufficient to draw an inference that Stephan, Brodsky, Wang, Niham and others took "common action for a common purpose by common agreement or understanding . . . from which common responsibility derives" (*Goldstein v Siegel*, 19 AD2d 489, 493 [1963]; *see Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr.*, 59 AD3d 473, 479 [2009]). Accordingly, we dismiss the tortious interference and aiding and abetting causes of action as against Stephan and Brodsky (*see Home Town Muffler v Cole Muffler*, 202 AD2d 764 [1994]). However, we sustain such claims against Nihan based on evidence tending to show that while still employed by IDX, he gave Wang information about the proposed acquisition and revealed other confidential information about IDX. This evidence is sufficient to raise an issue of fact as to whether Nihan conspired with Wang to derail the acquisition.

Concerning the claims against the Phoenix Partners companies, the record, viewed in a light most favorable to plaintiffs, demonstrates that Wang was a rogue employee whose tortious acts to derail the acquisition were outside the scope of his employment with Phoenix and not committed in furtherance of Phoenix's business. Accordingly, the Phoenix Partners companies cannot be held vicariously liable for such acts (*see Bowman v State of New York*, 10 AD3d 315, 316 [2004]; *Nicollette T. v Hospital for Joint Diseases/Orthopaedic Inst.*, 198 AD2d 54, 55 [1993]).

The cause of action for injunctive relief against Stephan is

dismissed. Given the lack of evidence that Stephan participated in the campaign against IDX or otherwise engaged in or threatened to engage in any disparagement of plaintiff Cawley in violation of a prior settlement agreement, there is no support for plaintiffs' claim that Stephan is likely to continue to disparage IDX and Cawley absent injunctive relief.

We have considered the parties' other contentions and find them unavailing. Concur—Mazzarelli, J.P., Sweeny and Román, JJ.

Acosta and Abdus-Salaam, JJ., dissent in part in a memorandum by Abdus-Salaam, J., as follows: I would affirm the motion court's denial of summary judgment to the Phoenix Partners companies, Stephan, and Brodsky. I disagree with the majority's assessment that plaintiffs' claim against these defendants is based on "unwarranted inferential leaps." Rather, "[m]indful that issue finding and not issue resolution is a court's proper function on a motion for summary judgment, and drawing all inferences in plaintiff[s'] favor as we are bound to do" (*Cruz v American Export Lines*, 67 NY2d 1, 13 [1986]), there is enough circumstantial evidence—including defendants' recruitment of Nihan, the timing of their various electronic conversations regarding the transaction and the beginning of Wang's pseudonymous e-mail campaign, their animus towards plaintiff Cawley, their knowledge of Wang's hostility directed at Cawley, Brodsky's e-mailing of the "pervscan" link to Wang, which Wang then sent to Knight—as well as direct evidence in the form of the mysterious e-mail (with Wang's mantra about "bad things happen when good people do nothing") that went out under Brodsky's name to Knight, but of which Brodsky says he knows nothing—that leads me to conclude that if defendants' summary judgment motion dismissing the second amended complaint is decided on the version of the facts most favorable to plaintiffs (*see Mullin v 100 Church LLC*, 12 AD3d 263, 264 [2004]), summary judgment was properly denied.

Defendants' avowed protestations of innocence do not render all of this circumstantial and direct evidence speculative. While the affidavits of Brodsky, Stephan and Wang purport to explain away the evidence, it is not this Court's function to make credibility determinations. And, although much of plaintiffs' evidence is circumstantial, "[c]ircumstantial evidence is not inherently weaker than direct evidence and frequently circumstantial evidence may be stronger than direct evidence" (1A NY PJI3d 1:70, at 105 [2011]). In granting summary judgment, the majority has disregarded the concept that "[a] determination based on circumstantial evidence is essentially one to be made by the

fact-finder, guided by the legal principles appropriate to such a determination" (*Abramo v Pepsi-Cola Buffalo Bottling Co.*, 224 AD2d 980, 981 [1996]).